## NEAL *v.* THE STATE.

1. There is no law of force in this State which confers upon a judge any power or authority to suspend the execution of a sentence imposed in a criminal case, except as an incident to a review of the judgment; and therefore a sentence to which no exception is taken, directing, among other things, that the accused do work in a chain-gang for a term of six months, can not lawfully be qualified by adding thereto the words, "sentence of six months suspended until further order of the court." Such words in such a sentence are of no force, and consequently should be ignored and the sentence executed just as if they did not appear therein.
2. One upon whom such a sentence has been imposed can not, though more than six months may have elapsed from the date of the sentence, be held to have served out the term therein mentioned, when in point of fact he has never been placed in a chain-gang; more especially when the sentence itself declares, "that this sentence begin and be counted from the time of the reception of said defendant in the chain-gang under this sentence and judgment."
3. It follows from the foregoing, that this court will not set aside an order directing the execution of a sentence framed as above indicated, although such order was passed more than six months after the imposition of the original sentence, and though the accused was not called upon to show cause why such order should not be made.

Argued May 2,—Decided May 24, 1898.

Order to enforce sentence.　Before Judge Fite.　Gordon superior court.　February term, 1898.

*W. R. Rankin*, for plaintiff in error.
*Sam P. Maddox, solicitor-general,* contra.

FISH, J.   On the 8th day of March, 1897, in the superior court of Gordon county, the plaintiff in error was found guilty of the offense of adultery and fornication.   On the same day, the court sentenced him as follows:  "Whereupon it is considered, sentenced, and adjudged by the court, that J. M. Neal do pay within three days a fine of three hundred dollars and all costs of this prosecution, and work in the chain-gang six months, and then be discharged; or, in default of such payment, that said defendant do work in a chain-gang on the public works or on such other works as the county authorities may employ the chain-gang, for and during the full term of twelve months, and then be discharged; and it is further ordered that this sentence begin and be counted from the time of the reception of said defendant in the chain-gang under this sentence and judgment. The defendant may be discharged at any time on the payment of said fine and costs.   Sentence of six months suspended until further order of the court."   The bill of exceptions states that the verdict was a consent verdict, and that the defendant paid the fine and cost and was discharged.   On March 12, 1898, at the February term of the court, the following order was passed by the judge: "Whereas, at the February term, 1897, of this court, J. M. Neal plead guilty to the offense of adultery and fornication, and was sentenced by the court to pay a fine of three hundred dollars and all cost and to work in the chain-gang for and during the term of six months, and the said sentence of six months was suspended till the further order of the court; it is therefore, upon sufficient cause being shown to the court, ordered that the sheriff of said county and his lawful deputies arrest said J. M. Neal, and that six months sentence in the chain-gang be enforced."   To this order Neal excepted, because it was "allowed and issued without notice to him, and is not based upon any rule or proceeding, issued or instituted by the court, calling upon defendant to show cause why such order should not be passed."

1. The plaintiff in error contends here, that " the action of

the court, after passing sentence, in suspending the execution of the same," was "an unwarranted interference with the powers, duties and functions of the executive." We think that this contention is sound. The constitution of the State expressly provides, that the Governor "shall have power to grant reprieves and pardons, to commute penalties, remove disabilities imposed by law, and to remit any part of a sentence for offenses against the State, after conviction, except in cases of treason and impeachment, subject to such regulations as may be provided by law relative to the manner of applying for pardons. Upon conviction for treason he may suspend the execution of the sentence and report the case to the General Assembly at the next meeting thereof, when the General Assembly shall either pardon, commute the sentence, direct its execution, or grant a further reprieve. He shall, at each session of the General Assembly, communicate to that body each case of a reprieve, pardon or commutation granted, stating the name of the convict, the offense for which he was convicted, the sentence and its date, the date of the reprieve, pardon or commutation, and the reasons for granting the same." Civil Code, § 5815. There is no provision in the constitution authorizing the courts of the State, having jurisdiction in criminal cases, to exercise any of these powers; and the constitution declares that " The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided." Civil Code, § 5720. If the execution of a sentence, which has been imposed in accordance with the law, can be suspended, either in whole or in part, as the judge may see fit, during the pleasure of the court, then the court may in this way indirectly grant a reprieve, commute a penalty, or remit any part of a sentence, and thus practically exercise powers which the constitution confers exclusively upon the Governor of the State. For a sentence, the execution of which is suspended during the pleasure of the court, may never be enforced, as it may never be the pleasure of the court to revoke the order of suspension and enforce its execution. If a court can indefinitely suspend the execution

of a sentence, it may even indirectly exercise all the pardoning power conferred upon the chief executive of the State, except that portion of it which embraces the removal of disabilities imposed by the law, in certain criminal cases, as a consequence of conviction.    The fundamental law provides that when the Governor exercises any of these functions he shall report his action and the reasons therefor to the legislature. Surely the judges of courts having criminal jurisdiction can not, unhampered by such a requirement, exercise any of these powers.    In State v. Voss, 80 Iowa, 467, it was held, that a court has no authority to suspend at pleasure the execution of a judgment for a crime committed, and that a provision to this effect in a sentence is void.    In re Markuson, 7 N. D. the court ruled that several orders purporting to suspend the operation of a judgment in a criminal case, which, for reasons stated in the opinion, could not operate as a stay or supersedeas pending an appeal to the Supreme Court, were without authority of law, and null and void.    In re Webb, 89 Wisc. 354, it was held, that a court can not suspend a sentence which it has pronounced in a criminal case, except as incident to a review of the case upon writ of error, or upon other well-established legal grounds.    The only case which we have found, involving the question of the power of a court to indefinitely suspend the execution of an imposed sentence, which conflicts with the view which we have taken of this question and with the authorities cited above, is State v. Whitt, 117 N. C. 804.    In that case, a defendant, after being sentenced to five years imprisonment and serving six days, was brought into court, and, on his agreeing to pay the costs of prosecution into court, the judgment was suspended; and it was held that the court had power, at a subsequent term, on the defendant's failure to pay such costs, to sentence him to imprisonment for one year.

Upon the question whether a court, after a conviction, can indefinitely suspend the imposition of a sentence, the authorities are in conflict.    In People v. Blackburn, 6 Utah, 347, United States v. Wilson, 46 Fed. Rep. 748, and People v. Morrisette, 20 How. Pr. 118, this question was squarely presented, and, in each case, decided in the negative, upon the ground

that the authority to relieve a person convicted of a criminal offense is not given to the courts, but belongs to the pardoning power; but in the Utah case a mandamus to compel sentence was denied on the ground that the judge, in his discretion, had evidently intended to impose the minimum punishment, which was merely nominal, and that the purely perfunctory duty and useless expense of formally imposing sentence would not be compelled by mandamus. In People *v.* Mueller, (Ill.) 4 Crim. L. Mag. 725, People *v.* Monroe County Court, 141 N. Y. 288, and People *v.* Webster, 36 N. Y. Supp. 745, the same question was decided in the affirmative. In New York there was a special statute authorizing the criminal court to exercise this power, but it was held that, independently of the statute, it existed at common law, and that it did not encroach upon the constitutional powers of the executive to grant reprieves and pardons; and such is the effect of the ruling in the Illinois case, though in that case the court held that the minimum sentence allowable was practically nothing, and said: "The difference between a suspension of sentence and any punishment I should impose, on the theory of guilt, is such an incalculable minimum as to defy statement." In Com. *v.* Dowdican's Bail, 115 Mass. 133, where the right of the court to postpone sentence is fully recognized, Gray, J. said: "It has long been a common practice in this Commonwealth, after verdict of guilty in a criminal case, when the court is satisfied that, by reason of extenuating circumstances, or of the pendency of a question of law in a like case before a higher court, or other sufficient cause, public justice does not require an immediate sentence, to order, with the consent of the defendant and the attorney for the Commonwealth, and upon such terms as the court in its discretion may impose, that the indictment be laid on file; and this practice has been recognized by statute"; citing the statutes. In North Carolina the right of a trial court to make an order suspending sentence, upon the payment of the costs, is recognized. In State *v.* Crook, 115 N. C. 763, the court says: "The practice of making an order, where defendants are convicted or submit to a criminal charge, that the judgment be suspended upon the payment of the costs, is one that seems to be somewhat peculiar

33

to our own courts."    State *v.* Addy, 43 N. J. L. R. 113, was on an indictment for maintaining a nuisance, and while announcing that "The practice of suspending sentence after conviction of crime is, under some circumstances, justifiable," decided that there was in fact no suspension of sentence, but that the order of the lower court, though appearing, in form, to be a suspension upon condition of payment of costs, was, in legal effect, an order to abate the nuisance and pay the costs.    The decision in Weaver *v.* People, 33 Mich. 296, seems to approve the doctrine that a court may suspend sentence in a criminal case.    In a subsequent case (People *v.* Riley, 53 Mich. 262) the same court appears to have been equally divided as to such power.    Champlin, J., said: "I do not think it is competent for a circuit judge or other judicial officer to suspend indefinitely the sentence which the law makes it his duty to impose upon a person duly convicted, or who may plead guilty in his court. The effect of a suspension of sentence operates as a quasi-pardon. . . . The pardoning power under our constitution is reposed in the governor, and not in the judges."

In a still later case, People *v.* Brown, 54 Mich. 15, although the question was not strictly before the court, Chief Justice Cooley, delivering the opinion, in commenting upon a petition to the judge of the lower court to suspend sentence, said: "They [the petitioners] formally request the judge himself, a high State official, and the chief conservator of law and public order in that part of the State, to grasp at power not confided to him and usurp authority." And, again, he said: "This judge would be usurping the functions of the executive were he to assume to give immunity from punishment. No doubt judges have done this sometimes, under pressure of such influence as appears here; but this is no reason for asking a repetition of the wrong. It is rather a reason for being especially careful and particular not to invite it, lest by and by it come to be understood that the power to pardon, instead of being limited to one tribunal, is confided to many." We think that the opinion expressed by Chief Justice Cooley, and entertained by the courts that have decided this question in the negative, is the correct one. The power to indefinitely postpone the punishment prescribed by

the law, whether exercised by suspending the imposition, or by suspending the execution, of a sentence, is the power to perpetually prevent punishment, a power which, under such provisions as are found in the constitution of this State, does not exist in the courts. The authorities draw a clear distinction between the suspension of a sentence and the suspension of the enforcement of a sentence; and however they may differ as to the right of a court to indefinitely postpone its judgment in a criminal case, it is well established that it can not, after the judgment is rendered, indefinitely postpone its execution. In the present case, it is to be presumed that the judge, in imposing the sentence, exercised the discretion conferred upon him by the law, as to the character and extent of the punishment, with a due regard to the circumstances of the case and the demands of justice. This being so, the sentence imposed by the court is to be taken as the one necessary for the due enforcement of the law and the vindication of justice. Therefore, the power to indefinitely suspend its execution, either in whole or in part, would be the power to prevent the enforcement of the law and to defeat the demands of justice. It is not apparent from the record why the court ordered the sentence of six months imprisonment in the chain-gang to be suspended until the further order of the court; probably the judge had in view the reformation of the defendant. But there is no provision whatever in the laws of this State for setting at liberty a convicted criminal and hanging over his head a threatened sentence, or the threatened enforcement of an imposed sentence, for the purpose of constraining him to refrain from further violations of the criminal statutes of the State. Of course, we are not to be understood as holding that a court may not temporarily postpone the execution of its sentence in a criminal case, pending proceedings for the purpose of obtaining a new trial or a review of the judgment. All the authorities agree that there may be a suspension for such purposes. The sentence imposed by the court below was not lawfully qualified by the addition thereto of the words, "sentence of six months suspended until further order of the court." Such words in such a sentence are of no legal force, and consequently should be ignored and the sentence executed just as if they did not appear therein.

2. The plaintiff in error contends that, as the court had no authority to indefinitely suspend the execution of the sentence, the period of his six months imprisonment in the chain-gang, in contemplation of law, commenced on March 8th, 1897, the date when the judgment of the court was rendered, and when he was in custody, and that he could not be lawfully imprisoned, under this sentence, after the expiration of six months from its date.   In support of this contention, he cites In re Webb, supra. In that case the defendant, on the 16th of March, 1894, was sentenced to pay a fine, to pay the costs of prosecution, and to stand committed to the common jail of the county until such fine and costs were paid, the period of imprisonment to be limited to the period of six months; and in the case the costs were paid that day, the court directed "that sentence of imprisonment be suspended until the further order of the court."   On Oct. 12, 1894, at a succeeding term, the court, after reciting the sentence and the fact that the fine had not been paid, ordered and adjudged that the defendant "do forthwith pay said fine of two hundred dollars, and that he stand committed to the common jail of the county until said fine is paid, the period of imprisonment being limited in accordance with said sentence to the period of six months."   The Supreme Court of Wisconsin held that the direction of the court that the sentence of imprisonment be suspended until the further order of the court was void, that the period of imprisonment, in contemplation of law, began on the date when the sentence was rendered, and when the defendant was in custody and failed to pay the fine, and that he could not lawfully be imprisoned after it had expired.   In that case, it will be observed that, as the order suspending the execution of the sentence was void, the time when the term of imprisonment *should* have begun was the day that the judgment of the court was rendered.   In the case at bar, the sentence, to "work in the chain-gang six months," was "to begin and be counted from the time of the reception of said defendant in the chain-gang under this sentence and judgment." As he has never been received "in the chain-gang under this sentence and judgment," the point of time from which the imprisonment in the chain-gang was to begin to run, as fixed by

the judgment of the court, has not arrived, and can never arrive until the defendant is received into the chain-gang. While there is this clear difference between the two cases, we are not satisfied with the reasoning by which the Wisconsin court reached the conclusion that if a defendant is, under the sentence of the court, to stand committed to the county jail for six months, and is unlawfully discharged, under an order of the court, without being sent to the jail at all, and goes at liberty for that length of time, he has, in legal contemplation, served out his sentence. Suppose a court, in this State, sentences a person convicted of a criminal offense to work in the chain-gang for twelve months, without attempting to suspend the execution of the sentence, and the sheriff, in disregard of his duty and on his own motion, immediately discharges the prisoner and allows him to have unrestrained liberty for a year or longer, can it be held, after he has enjoyed twelve months of perfect but unlawful freedom, that he has, in contemplation of law, worked in the chain-gang for the full term for which he was sentenced? We apprehend not. What difference can it make whether the sheriff discharges the sentenced criminal unlawfully on his own motion, or discharges him unlawfully under a void order of the court? In direct conflict with the decision, on this point, rendered In re Webb, supra, is the ruling in Ex parte Vance, 90 Cal. 208. There the prisoner was sentenced to pay a fine and to be imprisoned until such fine was paid, in the proportion of a day for every dollar of the fine, and was released by the sheriff without authority. The court said: "The act of the sheriff in releasing the petitioner was unauthorized, and petitioner's departure from the jail to which he had been lawfully committed, without having been discharged by due course of law, was equally so, and was, in effect, a technical escape, from which he can derive no advantage. The time of the prisoner's absence from jail, in violation of law, can not be considered as having been spent in jail in satisfaction of the judgment which required his actual imprisonment."

To the same effect is State v. Cockerham, 2 Ired. 204, "where a defendant, who had been convicted of an assault, was sentenced to be imprisoned for two calendar months 'from and

after the first of November next'; and did not go into prison according to the sentence, and at a subsequent term of the court it was directed that the sentence for two months imprisonment should be immediately executed." The Supreme Court of North Carolina held in that case that the court below had power to make such order. Gaston, J., delivering the opinion, said: "The time at which a sentence in a criminal case shall be carried into execution forms no part of the judgment of the court. The judgment is the penalty of the law, as declared by the court; while the direction, with respect to the time of carrying it into effect, is in the nature of an award of execution. In this case the judgment was that the defendant be imprisoned two calendar months; and the words, which follow in the record, 'from and after the first of November next,' direct the executing of the judgment." In Hollon v. Hopkins, 21 Kan. 638, which was a proceeding in habeas corpus, the petitioner had been sentenced to State prison for three years, from a designated date. On the day after the sentence was imposed he made his escape from the custody of the sheriff, and was not recaptured until more than three years had elapsed from the time fixed in the judgment for the beginning of his imprisonment in the penitentiary. He insisted that the sentence had expired by its own limitation; but the Supreme Court, in a well-considered opinion, held otherwise. The court said: "The only way of satisfying a judgment judicially is by fulfilling its requirements. Of course, if Hollon had died or been pardoned, the sentence would be at an end. But as these things have not happened, and as the sentence has not been disturbed by any judicial decision or determination, there is no way of satisfying its requirements, or of exhausting its force, except service by Hollon of the required time in the penitentiary. It has often happened that a judgment sentencing a person to be executed capitally on some particular day has not been fulfilled on that day. A reprieve has been granted, an escape effected, some unforeseen event preventing it has occurred, or the officers from some cause have failed to perform their duty, and the convict has, for the time being, escaped punishment. But in no case, so far as we are informed, has it been held that the convict was

thereby freed from all punishment, or that he could not be executed on some subsequent day.   See the following authorities: Ex parte Nixon, 2 Rich. (N. S.) 4, 6, and cases there cited; Ex parte Howard, 17 N. H. 545; State *v*. Oscar, 13 La. Ann. 297; Lowenburg *v*. People, 27 N. Y. 337; Rex *v*. Harris, 1 Ld. Raym. 482.   If a fine should not be paid at the time ordered, it could certainly be afterwards collected.   The time fixed for executing a sentence, or for the commencement of its execution, is not one of its essential elements, and, strictly speaking, is not a part of the sentence at all.   See cases above cited, and State *v*. Cockerham, 2 Ired. 204; Ex parte Bell, 56 Miss. 282, and Dolan's case, 101 Mass. 219.   The essential portion of a sentence is the *punishment*, including the *kind* of punishment and the *amount* thereof, without reference to the time when it is to be inflicted."   In Dolan's case, cited above, by the Kansas court, it was held that: "The sentence of a convict to imprisonment for a term expressed only by designating the length of time is to be satisfied only by his actual imprisonment for that length of time, unless remitted by legal authority; and if a sentence is limited to take effect upon the expiration of a previous sentence, its period will not begin to run until the first sentence has so been fully performed or legally discharged." We are clearly of opinion that the contention of the plaintiff in error, that he has, in legal contemplation, served out his sentence of six months imprisonment in the chain-gang, is unsound, and that, with or without the order of the court of which he complains, it was the duty of the proper officers to see that such sentence was duly enforced.

3. It follows from the foregoing, that this court will not set aside the order directing the execution of the sentence, although such order was passed more than six months after the imposition of the original sentence and though the plaintiff in error was not called upon to show cause why such order should not be made.

*Judgment affirmed.    All the Justices concurring.*