THE PEOPLE *ex rel.* Anton Boenert

*v.*

THOMAS E. BARRETT, Sheriff.

202    287
d212 ²550

*Opinion filed April 24, 1903.*

1. CRIMINAL LAW—*court has no power to indefinitely suspend sentence.* In a criminal case the court has power to delay pronouncing judgment for a reasonable time to hear and determine a motion for new trial or in arrest of judgment, or for other proper causes, but it cannot indefinitely suspend the sentence and judgment.

2. SAME—*when court loses jurisdiction to pass sentence.* An unexplained delay of over two years between the release, pending a motion for a new trial and upon his own recognizance without sureties, of a person convicted of crime, and the overruling of such motion and his motion in arrest, deprives the court of jurisdiction to pronounce sentence, notwithstanding the delay was consented to by the convicted party.

3. SAME—*pronouncing judgment and sentence is not discretionary with court.* The pronouncing of judgment and final sentence upon one convicted of crime is not a matter of discretion with the court or the public prosecutor, nor can it be made to depend upon the conduct of the convicted party, since, in this State, the Indeterminate Sentence act is the only law authorizing the parole of a person convicted of crime.

ORIGINAL petition for *habeas corpus.*

At the December term, 1902, of this court, the relator presented his petition for a writ of *habeas corpus*, directed to Thomas E. Barrett, sheriff of Cook county, to the end that he might be discharged from the custody of the sheriff, who is detaining him by reason of a *mittimus* issued by the criminal court of Cook county. Upon consid-

eration of the petition a writ was awarded commanding
the sheriff to cause the relator to be brought before the
court, together with the cause of his detention. A return
was duly made to the writ at the February term, 1903,
showing that the relator was held by virtue of a warrant
of commitment from the criminal court of Cook county,
directing the sheriff to convey the relator to the peni-
tentiary at Joliet. The relator replied to the return,
alleging that the judgment on which the warrant of com-
mitment was issued was null and void because the court
had no jurisdiction to pronounce it, and because it was
beyond the power of the court to enter.

The facts, as they appear from the record, are as fol-
lows: The relator, Anton Boenert, was indicted in the
criminal court of Cook county at the June term, 1898, for
larceny and embezzlement, and on entering into a recog-
nizance of $1000, with two sureties, for his appearance,
was released from custody. Afterwards, at the April
term, 1900, the relator was tried by a jury and found
guilty of grand larceny April 12, 1900. He immediately
moved for a new trial and was remanded into custody.
On May 5, 1900, being the last day of the April term, on
motion of the relator the motion for a new trial was con-
tinued, and he was recognized, without sureties, in the
sum of $500, to appear before the criminal court of Cook
county on May 7, 1900, and from day to day and from term
to term, and from day to day of each term, until the final
sentence or order of the court, to answer upon the indict-
ment pending, and he was on his own recognizance re-
leased from custody. The next record in the case is of
the October term, 1902. On October 31, 1902, the same
judge before whom the relator was tried and convicted
and who allowed him to depart on his own recognizance
overruled his motion for a new trial. Relator then moved
in arrest of judgment, and this motion was continued
to November 5, 1902, and he was remanded. The motion
was finally overruled November 11 and relator sentenced

to imprisonment in the penitentiary.   He immediately applied for a writ of *habeas corpus* to the circuit court of Cook county.    On a, hearing the petition was dismissed. He then applied to this court, as already stated.

·JOSEPH B. DAVID, for relator.

CHARLES S. DENEEN, State's Attorney, and F. L. BAR-NETT, for respondent:

Jurisdiction to enter judgment after suspended sentence is preserved by motion pending and a recognizance , or imprisonment of defendant.   *People* v. *Allen*, 155 Ill. 61.

Power to suspend sentence is inherent in courts of criminal jurisdiction and rests upon common law authority.   1 Hawkins' P. C. chap. 51, sec. 8; 1 Chitty on Crim. Law, (1st ed.) 617-758; *Regina* v. *Ryan*, 7 Cox's Crim. Cas. 109; 4 Blackstone's Com. chap. 31.

Power to suspend sentence is fully sustained by American decisions.   *People* v. *Court of Sessions*, 141 N. Y. 288; *People* v. *Graves*, 31 Hun, 382; *People* v. *Harrington*, 15 Abb. N. C. 161; *Commonwealth* v. *Dowdican's Bail*, 115 Mass. 136; *State* v. *Addy*, 43 N. J. L. 114; *Reilly* v. *People*, 53 Mich. 260; *Weaver* v. *People*, 33 id. 297; *State* v. *Sylvester*, 65 N. H. 193.

Mr. JUSTICE CARTER delivered the opinion of the court:

It is strenuously urged, for the relator, that the long interval of two years and five months that intervened between his release on his own recognizance while his motion for a new trial was pending, and the final disposition of that motion and his remandment to custody, which was followed nearly a month later by a sentence to the penitentiary, was tantamount to an abandonment of the proceeding and a release· from further imprisonment, and that the court thereby lost jurisdiction to enter up a judgment on the verdict.

At common law, upon every conviction in the court of king's bench of a crime, capital or not capital, whether by verdict or confession, the party had four days to move

in arrest of judgment, if there were so many days remaining of the term, and if not, then the longest time that could be had in the term. (2 Hawk. P. C. chap. 48.) The power of granting a respite belongs, of common right, to every tribunal which is invested with authority to award execution, but it is commonly granted where the defendant pleads a pardon, which, though defective in point of form, sufficiently manifests the intention of the crown to remit the sentence, where it seems doubtful whether the offense is not included in some general act of grace, or whether it amounts to so high a crime as that charged in the indictment. The judge sometimes also allows it before judgment, or at least intimates his intention to do so, as when he is not satisfied with the verdict and entertains doubts as to the prisoner's guilt, or when a doubt arises, if the crime be not within clergy, or when, from some favorable circumstances, he intends to recommend the prisoner to mercy. (1 Chitty on Crim. Law, 758; 2 Hawk. P. C. chap. 51, sec. 8; 2 Hale's P. C. chap. 58, p. 412.) "If the judge thinks it proper to reprieve a capital convict, he sends a memorial or certificate to the king's most excellent majesty, directed to the secretary of State's office, stating that, from favorable circumstances appearing at the trial, he recommends him to his majesty's mercy and to a pardon, upon condition of transportation or some slight punishment. The recommendation is always attended to." (Christian's note to 4 Blackstone's Com. *404.)

There can be no doubt that a court has the right, in a criminal cause, to delay pronouncing judgment for a reasonable time, for the purpose of hearing and determining motions for a new trial or in arrest of judgment, or to give the defendant time to perfect an appeal or writ of error, or for other proper causes; but to suspend indefinitely the pronouncing of the sentence after conviction, or to suspend indefinitely the execution of the judgment after sentence pronounced, is not within the power of the

court. To allow such a power would place the criminal at the caprice of the judge. If the judge can delay the sentence one year he could delay it for fifteen years, or any length of time. In *United States* v. *Wilson*, 46 Fed. Rep. 748, the defendant pleaded guilty to adultery, and upon his promise to obey the laws upon that subject it was "ordered that the sentence be suspended and until further orders of this court, and that said defendant be released and his bail exonerated." Two years later the order was revoked and he was sentenced. The court held that the entry of the first order was error; that it was beyond the power of the court to suspend sentence for an indefinite time, and that the court could not correct such error at another term.

In *People* v. *Blackburn*, 6 Utah, 347, one Dodds was found guilty of voluntary manslaughter, and on his motion, by an order entered reciting that good and sufficient reasons were made to appear therefor, sentence was suspended during good behavior. Blackburn, the successor of the judge who entered this order, refused to fix a time to pronounce judgment. On a proceeding for a mandate to the judge the court said: "It is the duty of the court to keep control of the case and within a reasonable time to proceed to give judgment, and in doing so to exercise such discretion as the statute governing the particular offense commits to the court. The authority to wholly relieve parties from a conviction for crime is not given to the courts but belongs to the pardoning power." The court held that the court below had determined to inflict the lightest penalty, and that being purely nominal, he had refused to pass sentence at all. See, also, *In re Flint*, 71 Pac. Rep. (Utah,) 531.

In *Weaver* v. *People*, 33 Mich. 295, the defendant pleaded guilty, sentence was suspended until the next term, and he was allowed to go on his own recognizance. Nothing further was done for two years and six months, when he was sentenced. The court said: "Sentence may be sus-

pended for various purposes. It may be for the purpose
of allowing steps to be taken for a new trial or other
relief, or it may be with a view of letting the offender go
without punishment. The release of a defendant on his
own recognizance and without sureties, in a merely nomi-
nal amount, signifies, usually, the latter purpose. It at
least is a plain assertion of the judge that he did not re-
gard the offense as one that should receive a severe pun-
ishment. The failure to take steps during the October
term of 1874 was a practical abandonment of the prose-
cution, and corroborates the opinion that such must have
been understood as the object of the suspension, and as
the record stands it is fairly to be inferred it was in-
tentional." And in that case the judgment was reversed
and the defendant discharged, but in the subsequent case
of *People* v. *Reilly*, 53 Mich. 260, the same court appears
to have been equally divided as to the power to suspend
sentence. In this case Reilly was convicted of robbery
October 22, 1881, and moved for a new trial, but on Feb-
ruary 10, 1882, sentence was indefinitely suspended and
he was admitted to bail on his own recognizance in the
sum of $500, to appear in court February 14, 1882, and
from day to day and from term to term, then and there
to receive the sentence of the court. February 14 the
motion for a new trial was denied. About seven months
afterwards he was arrested on another charge but was
not tried, and on November 28, 1882, he was sentenced to
imprisonment for five years. Sherwood, J., said: "Under
the third assignment of error the respondent's counsel
claim that the suspension of sentence was so long that
the court lost jurisdiction to make the sentence he did.
Under our practice courts may, for good cause, suspend
sentence a reasonable length of time after trial and con-
viction." Champlin, J., said: "I do not think it is com-
petent for a circuit judge or other judicial officer to sus-
pend indefinitely the sentence which the law makes it
his duty to impose upon a person duly convicted or who

may plead guilty in his court. The effect of suspending sentence operates as a *quasi* pardon. It relieves the offender, for the time being, from the punishment which the law has prescribed shall be inflicted. The pardoning power, under our constitution, is reposed in the Governor, and not in the judges. * * * The constitution having vested this power in the Governor, it cannot be exercised by the circuit judge indirectly by letting the prisoner to bail on recognizance to appear when required, to receive sentence. A stay of sentence may be granted when a *certiorari* is sued out or when a writ of error is obtained for the purpose of review by the higher courts. Temporary stay may also be granted where steps are taken for a new trial; but all these are steps in the progress of the case, taken for the purpose of bringing about a change in the result. * * * It appears that over a year elapsed after Reilly was convicted of the crime of larceny from the person before he was sentenced. During a large portion of the time he had been suffered to go at large upon his own recognizance. If the judge entertained serious doubts of his guilt he should have recommended the Governor to pardon the respondent, and if he entertained no serious doubts of his guilt he should have pronounced judgment, instead of setting the criminal at large on his own recognizance. If such power can be exercised by a judge, it incorporates into our administration of the criminal law the ticket-of-leave system of the English judicature without its surveillance and checks, and places the criminal at the caprice of the judge, subject to be called up for sentence at any time. If the judge can delay sentence one year I do not see why he may not fifteen years. An exercise of such power in this age would be no less revolting to our sense of justice than was the exercise of such power in the reign of James I, when he sent Sir Walter Raleigh to the block fifteen years after his conviction." Campbell, J., said: "I think the court lost all power to sentence the respond-

ent by the discharge, on his own recognizance, for so long a period, and that the sentence cannot be sustained without practically overruling our previous holdings."

In a still later case, (*People* v. *Brown*, 54 Mich. 15,) Chief Justice Cooley delivering the opinion, in commenting upon a petition to the judge of the lower court to suspend sentence, said: The petitioners "formally request the judge himself, a high State official and the chief conservator of law and public order in that part of the State, to grasp at power not confided to him and usurp authority in the interest of a doubly convicted of-. fender. That there may be no misapprehension on this point, it is only necessary to understand exactly what it was the judge was requested to do. In terms it was to suspend sentence. Now, it is no doubt competent for a criminal court, after conviction, to stay for a time its sentence, and many good reasons may be suggested for doing so, such as to give opportunity for a motion for a new trial or in arrest, or to enable the judge to better satisfy his own mind what the punishment ought to be; (*Commonwealth* v. *Dowdican's Bail*, 115 Mass. 133;) but it was not a suspension of judgment of this sort that was requested or desired in this case. * * * This judge would be usurping the functions of the executive were he to assume to give total immunity from punishment. No doubt judges have done this sometimes, under the pressure of such influence as appears here, but this is no reason for asking a repetition of the wrong. It is rather a reason for being specially careful and particular not to invite it, lest by and by it come to be understood that the power to pardon, instead of being limited to one tribunal, is confided to many." With these views expressed by the Michigan judges we are disposed, in the main, to agree. See, also, *People* v. *Kennedy*, 58 Mich. 373.

The foregoing cases are quoted with approval by the Supreme Court of Georgia in *Neal* v. *State*, 104 Ga. 509, where the court say: "The power to indefinitely postpone

the punishment prescribed by the law, whether exercised by suspending the imposition or by suspending the execution of a sentence, is the power to perpetually prevent punishment,—a power which, under such provisions as are found in the constitution of this State, does not exist in the courts." In *In re Markuson*, 5 N. D. 180, the court said that at common law no stay after conviction could be obtained. In *People* v. *Morrisette*, 20 How. Pr. 118, the court used the following language: "I am of the opinion the court does not possess the power to suspend sentence indefinitely in any case. * * * An indefinite suspension of the sentence prescribed by law is a *quasi* pardon, provided the prisoner be discharged from imprisonment. No court in the State has any pardoning power. That power is vested exclusively in the Governor." This case was practically overruled by the court of appeals in *People* v. *Court of Sessions of Monroe County*, 141 N. Y. 288, where the court said: "Without attempting to collate all the authorities on the subject, it is sufficient to say that the power to suspend a sentence at common law is asserted by writers of acknowledged authority on criminal jurisprudence, by the uniform practice of the courts and numerous adjudged cases." In New York there was a special statute authorizing the court to suspend sentence, but the court held that this power existed at common law, independently of the statute, and that it simply postponed the judgment temporarily or indefinitely, and did not encroach upon the power of the executive to grant reprieves or pardons; that the court may suspend sentence as before, but that it can do nothing to preclude itself from passing a proper sentence whenever such a course appears to be proper.

In Massachusetts it has long been the practice,—and such practice is now recognized by statute,—after a verdict of guilty in a criminal case, when the court is satisfied that by reason of extenuating circumstances or of the pendency of a question of law in a like case before

a higher court, or other sufficient cause, public justice does not require an immediate sentence, to order, with the consent of the defendant and of the attorney for the commonwealth, and upon such terms as the court in its discretion may impose, that the indictment be "laid on file." Such order is not a final judgment, or a discontinuance, by which the case is put out of court, but a mere suspension of sentence, and the defendant may be brought in and sentenced at any subsequent period. (Thatcher's Crim. Cases, 267; *Commonwealth* v. *Dowdican's Bail,* 115 Mass. 133.) This practice was approved in New Hampshire in *Sylvester* v. *State,* 65 N. H. 193.

In *State* v. *Crook,* 115 N. C. 760, the court said: "The practice of making an order, where defendants are convicted or submit on a criminal charge, that the judgment be suspended upon the payment of the costs is one that seems to be somewhat peculiar to our own courts. * * * We search in vain for direct authority emanating from the courts of other States to aid us in determining the precise meaning of such orders, because it has not been the practice to make them elsewhere in the same way."

The court in *State* v. *Addy,* 43 N. J. L. (14 Vroom,) 113, said that "the practice of suspending sentence after conviction of crime is, under some circumstances, justifiable." Suspension of sentence, and subsequent arrest and imposition of sentence, have also been approved in *Gibson* v. *State,* 68 Miss. 241, *People* v. *Patrick,* 118 Cal. 332, and *Ex parte Williams,* 26 Fla. 310.

In *People* v. *Allen,* 155 Ill. 61, the relator pleaded guilty to the charge, but judgment upon his plea was stayed and he was allowed by the court to depart therefrom without recognizance, to appear again for sentence or any other purpose. More than three years afterwards the case was stricken from the docket. At the next term it was re-instated and the relator sentenced to the penitentiary. It was held, after a review of the authorities, that it was the duty of the courts, in criminal cases, "up-

on a conviction or plea of guilty, to pronounce judgment at that time, unless, upon motion for new trial, in arrest of judgment, or for other cause, the case is continued for further adjudication, and the defendant, by recognizance or being held in custody, required to continue to answer the charge, and if they fail to perform that duty but discharge the prisoner or permit him to go indefinitely, their power and jurisdiction over him cease and a subsequent sentence is without judicial authority." In the case at bar the relator moved for a new trial, and on his motion the cause was continued to the next term, which began the second day following. Nothing further was done in the matter for two years and five months. He had been at large on a recognizance in the sum of $1000, with two sureties, before his trial, and after conviction stood committed until the day his motion for a new trial was continued to the next term. At that time he was permitted to depart from the court on his own recognizance. The law makes no provision for one accused or convicted of crime to go at large on his own recognizance. A recognizance at common law was an obligation entered into before some court of record or magistrate duly authorized, with a condition to do some particular act, as to keep the peace or appear and answer to a criminal accusation. It was not signed by the party entering into it. (*Shattuck* v. *People*, 4 Scam. 477; 2 Blackstone's Com. 341.) A recognizance differs from a bail bond merely in the nature of the obligation created. The former is an acknowledgment of record of an existing debt; the latter, which is attested by the signature and seal of the obligor, creates a new obligation. (3 Am. & Eng. Ency. of Law,—2d ed.—687.) Our Criminal Code provides for the letting to bail of persons accused of crimes, and provides in section 7 of division 3, that "*each* of the bail shall be worth the amount of bail expressed in the recognizance over and above the amount exempt from execution, but the court, judge, justice of the peace or officer,

in taking bail, may allow more than two bail to justify severally in amounts less than that expressed in the recognizance, if the whole qualification be equivalent to two sufficient bail." It also provides for the surrender of the principal by his bail.

If two sufficient sureties are required of a person merely accused of crime, it would seem that nothing less ought to be required of one convicted of crime. The very nature of bail requires sureties. It is a delivery or bailment of a person to his sureties upon their giving, together with himself, sufficient security for his appearance, he being supposed to continue in their friendly custody instead of going to jail. (4 Blackstone's Com. 297; 1 Bishop on New Crim. Proc. sec. 248. See also *Smart* v. *Cason*, 50 Ill. 195.) The sureties can always exonerate themselves by surrendering the principal. If one is allowed his liberty on his own recognizance there is no surety bound to secure his appearance at court. He is in the custody of no one who can surrender him to the sheriff. As said in *Weaver* v. *People, supra,* the release of a defendant on his own recognizance and without sureties usually signifies that the offender is to go without punishment. No other construction would naturally be put on such an undertaking by the person so released from custody. It is true, there was in the case of the relator a motion for a new trial pending, which was continued to the next term, but nothing was done in the matter, although numerous terms intervened, for twenty-nine months. We are of the opinion that this was an unreasonable and unwarrantable delay, it being entirely unexplained by anything in the record, and that the court, in view of all the circumstances, including the omission to require security for the relator's appearance, lost jurisdiction of the case, and that the subsequent sentence was without judicial authority. *People* v. *Allen, supra.*

Whatever may have been the practice at common law, or whatever may be the practice in other States of this

country, in regard to the suspending of sentence for the purpose of giving the accused a chance to reform, and thus virtually reprieving him, the legislature of this State has adopted a different method to give persons convicted of crimes the opportunity to reform, by providing a system of parole and boards to administer the same, and in view of the expressed policy of the legislation of this State we are disposed to hold that the trial courts do not have the power to suspend the imposition of the sentence indefinitely after conviction, or to do such acts that virtually amount to an indefinite suspension of sentence, or to release the prisoner on parole. As said in *People* v. *Allen:* "If such power remained in the court three years it would continue indefinitely and might be exercised at any future time, and that, too, without any reason for doing so except such as might exist in the mind of the judge causing the re-arrest and pronouncing judgment. * * * The State has a right to demand, and the welfare of society requires, that those who are convicted or plead guilty to violations of the law shall be promptly and certainly punished."

Long and unreasonable delays in passing upon motions for new trials or in arrest of judgment are calculated to obstruct the administration of public justice and to operate as a denial of the right of the citizen to a speedy trial. It is said, however, in this case, that all the delay was with the consent of the relator, and that he cannot now be heard to complain. It cannot, of course, be contended that the doctrine of estoppel has any application here, nor can it be held that the relator could waive any requirement respecting the jurisdiction of the court to enter judgment and pronounce the sentence. If the court had no power thus indirectly to suspend sentence and to permit the relator to go at large upon his own recognizance or upon parole, such power could not be conferred by his consent nor by his express request. (*Harris* v. *People*, 128 Ill. 585; *Morgan* v. *People*, 136 id. 161.)

The rendering of judgment and the final sentencing of the defendant cannot be made a mere matter of discretion with the judge or the public prosecutor, nor to depend upon the subsequent conduct of the convicted person. If it were so, what subsequent conduct would demand or justify the pronouncing or the withholding of the sentence? And who would determine its character? Such conduct might be innocent in itself yet offensive to those in whom the power to apprehend or to punish resided. The liberty of the citizen cannot in a free country be made to depend for its security on the arbitrary will of any public officer; it can be taken from him by due process of law only.

The act of 1899, providing a system of parole, (Hurd's Stat. 1901, p. 669,) is the only law in this State authorizing the parole of a person convicted of crime. Provisions are made and means and instrumentalities are provided for its uniform operation and for its due administration. If the many criminal courts of the State had the power to enlarge persons convicted of crime on their own recognizance, during their good behavior or at the discretion of the presiding judge, there would, in effect, be in full force another and different system of parole without bounds or limitations and without uniformity, but wholly dependent in its operation, in each individual case, upon the discretion of the sitting judge. We are of the opinion, as we have already said, that no such power exists in the courts.

It follows that the imprisonment and detention of the relator by virtue of the *mittimus* issued in pursuance of the judgment and sentence so rendered were without authority of law, and that he should be and accordingly is discharged therefrom.          *Relator discharged.*