## NO POWER IN A TRIAL COURT TO SUSPEND SENTENCE.

Common Pleas Court of Franklin County.

STATE OF OHIO v. JOHN RADCLIFFE.

Decided, October 9, 1915.

*Clemency to Convicted Prisoners—Not Vested in the Ohio Courts—But is Conferred on Other Agencies—Judicial Power in a Criminal Case —Becomes Functus Officio After the Pronouncing of Sentence— Policy of the State Conclusively Shown by the Intermediate Law— No Common Law Jurisdiction in Criminal Cases.*

1. The pronouncing of judgment in a criminal case may be delayed for a reasonable time to hear and determine a motion for a new trial, or to give the defendant time to perfect an appeal or writ of error, or for other proper causes; but in the absence of a permissive statute a trial court can not suspend indefinitely the pronouncing of sentence or the execution of judgment. *Weber v. State*, 58 Ohio State, 616, not followed.
2. The court has no inherent power to suspend sentence in a criminal case. That doctrine belongs to the common law which was never in force in Ohio on the subject of crimes and procedure. The power now given by statute to suspend sentences in certain cases is to be construed as a limitation of power as well as the conferring of power.

*Robert P. Duncan* and *Franklin Rubrecht,* for plaintiff.
*Timothy S. Hogan, Ray S. Bates* and *C. B. Shook,* contra.

KINKEAD, J.

This case was tried and determined by verdict of a jury at the April term, 1915. Defendant was found guilty of burglary. In due course a motion for a new trial was made and overruled. Thereupon sentence was pronounced, record of all of which was duly made at that term. Thereafter, at the same term, on request of counsel, the court heard argument on application for suspension of sentence. At this time, after hearing arguments, the court informally expressed the opinion that it was doubtful

if it possessed power to suspend sentence in such a case. Thereupon, by agreement of counsel, an entry was put on at the April term setting aside the order overruling the motion of new trial. It did not actually refer to that part of the entry touching the sentence of the defendant to the penitentiary. The understanding or agreement was that briefs were to be furnished on the question of power to suspend the sentence.

A formal application is made for an order suspending the sentence. In its support reliance is placed upon the decision in *Weber* v. *State,* 58 Ohio State, 616. In that case the defendant, under an indictment for keeping a room for gambling, was sentenced to imprisonment in the county jail for a period of t days, and to pay a fine of $400, which was suspended. This was a misdemeanor.

In a *per curiam* report it was stated in the syllabus that:

"In a criminal case the court has power to suspend the execution of the sentence, in whole or in part, unless otherwise provided by statute; and has power to set aside such suspension *at any time during the term of court at which sentence was passed. Whether such suspension can be set aside at a subsequent term is not decided.*"

The trial court in that case of its own motion at the same term at which the sentence was pronounced set the order of suspension aside, because the defendant violated its conditions.

In support of the present application, the case of *State* v. *Whiting,* an unreported decision, is also cited. In that case the defendant was found guilty of the crime of cutting with intent to wound, a penitentiary offense. The sentence was suspended by the trial court, and was affirmed by the Supreme Court, without report.

Decisions of courts derive their value as controlling authority from the reason and logic of the conclusion. In the *per curiam* report and the unreported decision there is nothing but the bare conclusion unsupported by any statement of the reason or grounds therefor. It is merely held that the court has inherent power to suspend a sentence *unless otherwise provided.* The unreported decision was made since the enactment of Section

13706. The inference is claimed therefrom that such power is supposed to exist in spite of the statute which regulates the conditions under which a sentence may now be suspended, and that the court must have so considered it.

My Brother Dillon of this court, in *Re Lee,* 3 N.P.(N.S.), 544, held that:

"In the absence of a statutory enactment to the contrary, the power of a court to suspend execution of sentence during good behavior, or to revoke such suspension, is not impaired or limited by the passing of the term in which the suspension was made."

This decision was with reference to a suspension of sentence by a police court, and was entered upon the authority of *Weber* v. *State,* 58 O. S., 616.

There is authority in some jurisdictions which sustain the view that a judge or court, in the exercise of inherent power, may suspend a sentence. Conspicuous among the precedents on this side of the question is *People* v. *Court of Sessions,* 141 N. Y., 288, which asserts that the power to suspend a sentence finds its support at common law, which has been the uniform practice of the courts and is supported by numerous adjudged cases as well as by writers of acknowledged authority on criminal jurisprudence. The inherent power of the common law courts was thus relied upon though there was in that state a statute which authorized a suspension. The case can not well be regarded as an authority because of the existence of the statute, and for the further reason that the common law doctrine, whatever it was, can not have controlling effect in this state for reasons hereafter stated.

The cases of *State* v. *Crook,* 115 N. C., 760; *State* v. *Addy,* 43 N. J. L., 113, 39 Am. Rep., 547; *Gibson* v. *State,* 68 Miss., 241; *People* v. *Patrick,* 118 Cal., 332; *Ex Parte Williams,* 26 Fla., 310, and perhaps some others support the doctrine of inherent power.

The greater number of decisions in the several states do not support the rule of inherent power. One of the best considered opinions is that in *Ex parte Clendenning,* 22 Okla., 108, 132 Am. St., 628, which involved a question of power to revoke an

order of suspension, after lapse of time of sentence and after term and the right to issue commitment.

It is stated by the court that:

"Every case wherein the question is squarely presented and passed upon, *and the courts have given it the care and attention* its importance deserves, holds, practically without dissent, that in passing sentence on a person convicted of an offense the court has no power to provide that the imprisonment of the defendant shall begin at some future indefinite time, depending on the happening of an uncertain contingency; and an arrest under such conviction, made after the expiration of the term of imprisonment named in the sentence, and after the term, is illegal."

*People* v. *Barrett,* 202 Ill., 287, 95 Am. St., 230, is a recent well considered case. The power, which is universally conferred, to delay pronouncing judgment for a reasonable time, to hear and determine motions for new trial, or to give time for perfecting an appeal or writ of error, is mentioned as the only power which a court has; power to indefinitely suspend the pronouncing of sentence, or its execution is denied. To allow such a power, it is pertinently observed, would place the criminal at the caprice of the judge.

It is further said:

"that whatever the common law practice might have been, the Legislature has adopted a different method to give persons convicted of crimes the opportunity to reform, by providing a system of parole and boards to administer the same. In view of the expressed policy of the legislation of this state we are disposed to hold that the trial courts do not have the power to suspend the imposition of the sentence indefinitely after conviction, or to release the prisoner."

In *Tuttle* v. *Lang,* 100 Me., 123, it was remarked:

"In such case (having suspended sentence), having completed its judicial functions, it has voluntarily surrendered all further control over the case and person."

"After sentence has been pronounced in a criminal case the court can not, as a matter of leniency to the defendant, suspend

indefinitely its execution.'' *In Re Webb*, 89 Wis., 354; 46 Am. Rep., 846.

In 22 Okla., 108, 132 Am. St., 643, it is said:

''Were such a course permitted to trial courts, and did it receive the sanction of this court, it would make the enforcement of the law a mere farce, bring all courts in disrepute.''   *   *   *

*Grundel* v. *People*, 33 Colo., 191, 108 Am. St., 75:

''In the absence of a permissive statute, the indefinite postponement of sentence upon one convicted of crime deprives the court of jurisdiction to pronounce sentence at a subsequent term, and is, in effect, a discharge of the prisoner.''

*State* v. *Hunter*, 124 Iowa, 569, 104 Am. St., 361:

''An indefinite suspension of a sentence on conditions is, in practical effect, a conditional pardon.''

In *People* v. *Reilly*, 53 Mich., 260, it is said:

''If such power can be exercised by a judge, it incorporates into our administration of the criminal law the 'ticket-of-leave' system of the English judicature without its surveillance and checks, and places the criminal at the caprice of the judge, subject to be called up for sentence at any time. If the judge can delay the sentence one year, I do not see why he may not fifteen years.''

*U. S.* v. *Wilson*, 46 Fed., 748:

''Courts have no power to suspend sentence except for short periods depending the determination of other motions, or considerations arising in the cause after verdict.''

A court may delay pronouncing judgment in a criminal case for a reasonable time to hear and determine motions for new trial, etc., or to give the defendant time to perfect an appeal, or writ of error, or for other proper causes; but it can not suspend indefinitely the pronouncing of sentence or the execution of judgment. If a judge can delay the sentence one day he can de-

lay it for any length of time. *People* v. *Barrett,* 202 Ill., 287, 96 Am. St., 230.

"The authority to wholly relieve parties from a conviction for crime is not given to the courts but belongs to the pardoning power." *People* v. *Blackburn,* ₊6 Utah, 347; *People* v. *Brown,* 54 Mich., 15.

The power to indefinitely postpone the punishment prescribed by law by suspending the execution of a sentence is the power to perpetually prevent punishment, a power which, under provisions of the Constitution, does not exist in the courts. *Neal* v. *State,* 104 Ga., 509, 69 Am. St., 175; *Miller* v. *Evans,* 115 Iowa, 101, 91 Am. St., 43.

The case of *Commonwealth* v. *Mayloy,* 57 Pa. St., 291, is instructive in that it makes clear the essential distinction between the inherent power of the common law courts to suspend a sentence and the power of our state courts in the matter. The material difference between the power of common law courts, and that of our courts is made clear. The difference in the practice is shown to demonstrate how improbable it is that our courts should possess such inherent power. The argument is "that after the judgment or sentence is pronounced, which is but the judgment of the law, was intended, and ought to be final so far as the courts are concerned, with the execution of the sentence which follows, courts have nothing to do, nor ought they."

We have reviewed some of the authorities bearing on the question. The suggestions contained in views expressed shows that the trend of opinion and better reason is against the exercise of such power. It seems entirely clear that basic reasons underlying the common law rule are inapplicable to the conditions under the Constitution and statutes touching judicial jurisdiction and power in criminal cases. Common law doctrines may be adopted and applied only when conditions so warrant, and not where the whole plan of criminal procedure, jurisdiction and judicial power has been constructed on a wholly new basis. Courts must be cautious as well as zealous in the exercise of

power. The function of mercy, clemency, parole, probation or suspension has been carefully designed to be placed in hands of other officials than the courts. It is true that nothing specially is said about the question of inherent power. Nothing, it seems, can more effectually demonstrate the want of such power than our Constitution and statutes.

This brings us to the precise point of distinction between the common law jurisdiction over crimes and the constitutional and statutory jurisdiction of our state.

The Constitution creates *judicial power,* but does not prescribe any jurisdiction in criminal matters. There can be no judicial power without jurisdiction. If the jurisdiction prescribed by statute excludes all judicial power exercised by the judiciary in criminal cases, how can any inherent power be exercised in disregard of statutory penalty, and regulations concerning the assessment thereof? Article IV, Section 1, of the Constitution, vests judicial power in the several courts, embracing the court of common pleas, the one possessing original jurisdiction in criminal cases. Article IV, Section 4, of that instrument also provided that: ''The jurisdiction of the court of common pleas and of the judges thereof shall be fixed by law.''

No jurisdiction whatever is conferred on the common pleas court by the Constitution in criminal cases, and it can exercise none until conferred by law—by statute. *Stevens* v. *State,* 3 O. S., 453; *Allen* v. *Smith,* 84 O. S., 283.

In deciding the question whether the court has inherent power to suspend sentence, the distinction between the judicial power and jurisdiction should be kept in mind. Judicial power of necessity can be exercised within the scope of jurisdiction and not beyond it.

A comparison of judicial power as exercised within the scope of the statutory jurisdiction in criminal cases with that exercised in civil cases will clearly illustrate the distinction sought to be made. It will show how such power in civil matters is exercised according to the course of the common law, whereas in criminal cases it is to be exercised without regard to the common law,

but strictly in accord with the provisions of the statutes. Having no judicial power in the latter class of statutes except as derived by statutes, courts can not exercise any power derived from any other source. Common law crimes and procedure have been abrogated, which takes away all judicial power heretofore existing at common law, not specially provided for by statute. Judicial power in civil cases is largely dependent upon the common law, while in criminal cases it is not governed by the common law at all.

Jurisdiction in civil cases is conferred in part by Constitution and in part by statute. Section 11215 of the code provides that this court "shall have original jurisdiction in all civil cases where the sum or matter in dispute exceeds the original jurisdiction of justices of the peace."

From the nature of things civil jurisdiction could not be particularly stipulated or prescribed for as is done in criminal cases. By general understanding in the adoption of our Constitution and Civil Code of Procedure, jurisdiction in civil cases is to be exercised according to the course of the common law. In rendering judgment in such cases, the court is to be controlled by the common law; within the limits of procedural limitations as to terms and other matters it may modify, change or set aside its judgment once rendered. That is, in concluding upon what judgment is to be given the court exercises the inherent judicial power of the common law courts, unrestrained by any limitations prescribed by statute, except such as may relate to formal matters not having any relation to the substance of judicial power.

In criminal jurisdiction we have never had any common law crimes nor any common law jurisdiction. This everybody knows to be axiomatic. The judgment of the court, in each case of conviction by verdict or plea of guilty, is fixed by positive and irrevocable provisions of statute. The so-called inherent power of the common law courts has nothing whatever to do with it. The court has no will or wish, and no discretion in respect to whether a sentence shall or shall not be pronounced, or whether it shall or shall not be enforced.

When the judicial sentence is pronounced by the court, the judicial power becomes *functus officio,* and all that must thereafter be done or that may be done is prescribed by positive provision of statute. Strict construction of criminal statutes excludes the exercise of any power not therein expressly provided for. When the sentence is entered the prisoner must be disposed of as the statutes provide. To permit the court to qualify its order of sentence by conditions not authorized by statute, would result in disregard of the acts of the Legislature. When a sentence is pronounced jurisdiction ceases, unless the case be one within the statute authorizing a suspension.

To permit the judicial power to suspend a judgment required to be rendered by the mandatory provision of the statute would be to override the power of a co-ordinate branch of government which is vested with exclusive power to fix the jurisdiction and power of courts. It will permit a judge to substitute its judgment or caprice for the legislative function.

To sustain an inherent power of courts to suspend a sentence mandatorily required by statute would be an assumption of power, pure and simple. Criminal penalties as prescribed by statute represent the preponderant public opinion, as expressed by the Legislature, which can not be disregarded or modified by the judiciary, no matter how high and lofty its motive may be in any particular case where there is an inclination to suspend a sentence.

As before stated, the power of this court in civil matters is inherent in it as a common law court, to be exercised according to the common law doctrines. Its power to decide and adjudge on the merits of a case is not prescribed by constitution and statute. Its final judgment is controlled or governed by common law doctrines and rules which are not express in the sense that a penalty of a criminal statute is.

In other words, the judgment to be rendered in the civil case may, in a sense, constitute the individual judgment of the court, without control of specific requirement or limitation.

But the judgment and sentence in the criminal case is not the individual opinion or judgment of the judge or court, but is

that of the Legislature. Before the indeterminate and probation or suspension statutes, the judge or court had no discretion whatever, and was required to impose a sentence between the minimum or maximum penalty. Before the indeterminate statute, the court was bound to pronounce sentence within the statutes, the minimum or maximum term, or a term between the two. The enactment of the indeterminate law furnishes conclusive evidence that it was never intended that the court was to exercise clemency. Under these statutes the duty of sentencing according to their provisions is mandatory, the only discretion the court has being to suspend a sentence when conditions warrant it according to conditions fixed by statute.

Under Section 13706, General Code, the court has discretionary power to suspend the execution of a sentence, and to place the defendant on probation when "the defendant has never before been imprisoned for crime."

What would be the use of enacting such a statute if it was settled that courts had inherent power to suspend a sentence, the terms of which are prescribed by statute. If a court could prescribe the conditions of the order of suspension, why the necessity of detailed provision as to the conditions of suspension and of the regulation of those so placed on probation?

All these statutes and the whole criminal code, as well as the difference between judicial power in criminal and civil cases, in no uncertain language expressly and inferentially, demonstrate, in my judgment, the utter want of the inherent power of suspension.

Such inherent power as it is conceded courts have—as in contempt and disbarment—bear no analogy to the claim of inherent power asserted in this case. Such power exists only for the purpose of maintaining the dignity and power of the judiciary.

There were cogent reasons for sustaining the inherent power of common law courts to suspend sentence. The practice had its origin in the hardships resulting from "hard and fast" rules of procedure, under which there was no power to grant a new trial and when the verdict could not be reviewed by a higher court, and where it was doubtful whether the accused could have

the benefit of clergy. Arbitrary reprieves were granted in such cases, and in certain cases where youths were convicted of their first offense, the power belonging to every tribunal invested with authority to award execution in a criminal case. *Hale* P. C., ch. 58, p. 412, *1 Chitty Cr. L.* (1st Ed.), 617, 758.

Under our statutes the court is given power to pronounce sentence and to suspend in cases where there has been no previous conviction and imprisonment. The power to grant reprieve or pardon, however, is invested in the executive exclusively.

However so much some opinions may endeavor to distinguish a suspension of sentence from a pardon, the stubborn fact remains that a suspension of sentence upon certain conditions operates as a release from imprisonment. It is said that "the suspension of the sentence simply postpones the judgment of the court temporarily or indefinitely, but the conviction, etc., remain and become operative when judgment is rendered, "while pardon blots out of existence the guilt." *People* v. *Court,* 141 N. Y., 288.

The majority opinion is to the contrary, that the suspension without authority is in effect a full release, because if there is no power to suspend, there can be no subsequent power to vacate the suspension and enforce the penalty.

The view taken by the court in *People* v. *Barrett, supra,* aptly expresses the situation in this state. The state had adopted a different method from that of the common law to give persons convicted of crime the opportunity to reform, by providing a system of parol, and boards to administer the same, as well as of pardons, and suspension and probation.

There is good and sufficient reason for not regarding *Weber* v. *State, supra,* as authority. Section 13706 of the code specially provides the only condition under which a sentence can be suspended. It operates both as a grant and limitation of the power of suspension. A sentence may only be suspended in accord therewith.

I suppose it will have to be admitted that the conclusions of the court in *State* v. *Whiting* are not in accord with those contained in this opinion. My experience in following decisions in unreported cases has not been very satisfactory. So in

this case I chose not to regard *State* v. *Whiting* as an authority. No one ever knows why an unreported decision is made. The court might have considered that it would have been futile to reverse the lower court because the prisoner had been turned loose in contravention of statute and there was no power to recommit him. That was the effect of the act of the trial judge, in my opinion, and such is the rule of decision in other states. That was true because the judicial act became *functus officio*. The doctrine of *Weber* v. *State* could no longer be relied upon because the statute had otherwise provided that a sentence could only be suspended in case the accused had not previously been imprisoned.

I have thought it unnecessary to consider in detail the several statutes relative to the penalty to be assessed for each crime, to show the mandatory character therefor. It is important, however, to specially note the provisions of Section 1364 of the Criminal Code. This provides that the court must inform the defendant of the verdict and to ask if he has anything to say why judgment of sentence shall not be pronounced against him. It requires also, if the answer is in the negative, that "the court *shall* pronounce the judgment *provided by law.*"

It is difficult to perceive, therefore, how a court, by the exercise of power conferred by neither the statute nor the Constitution, and as part of the senence of the judgment *required by law,* can impose conditions of suspension in derogation of the statutes relative to probation, such as was done in *State* v. *Whiting*, the unreported decision. In that case the court imposed terms of probation entirely contrary to the statutory provisions contained in Sections 13, 709-13, 715, which provide for a complete system of probation by the present state board of administration. The order that was made in *State* v. *Whiting, supra,* took the matter out of the hands of the state officials, with whom the Legislature had entrusted the province and duty with respect to probation.

It is also pertinent to refer to the provisions of Section 2210 of the statutes, which provide that the effect of an order of suspension of sentence is to place the defendant on probation, under

control of the board of managers of the institution. How, then, can a court suspend a sentence upon such conditions as are named in *State* v. *Whiting, supra,* which is in derogation of the terms and conditions of the section referred to?

My conclusion is that the court has no statutory or inherent power to suspend the sentence in this case.

At the time of the conviction of defendant I was inclined to suspend the sentence if it could be legally done, because he was under the influence of liquor. On maturer consideration, however, the story of the defendant appears so unreasonable as not to be worthy of belief. If he had been innocent he would not have fought the policeman as he did. An innocent man would have acted differently, it would seem, in reliance upon the potency of innocence. I do not believe the officer would have made a wanton attack on the defendant nor do I believe that he did violence to the prisoner until the latter made it necessary.

The court declines to suspend sentence, both because it has no power, and for the further reason that it would injure the cause of justice to do so.

The former order vacating the overruling of the motion for a new trial having been made at the preceding term, an order may now be made overruling the motion, and the defendant is sentenced to an indeterminate term in the Ohio Penitentiary.