THE PEOPLE ex rel. Frederick W. Smith

v.

R. L. ALLEN, Warden.

*Filed at Mt. Vernon January 14, 1895.*

1. CRIMINAL LAW—*court should render judgment upon conviction or plea of guilty.* It is the duty of a court, upon the trial of a criminal case, upon conviction or plea of guilty, to pronounce judgment at the term unless the case is continued for further adjudication, and the defendant required, by recognizance or by being held in custody, to further answer the charge.

2. SAME—*jurisdiction lost by indefinite suspension of sentence.* Sentence indefinitely suspended, upon plea of guilty, cannot be lawfully imposed by the court more than three years afterwards, during which time the defendant has been permitted to go at liberty without recognizance.

This was an original petition for a writ of *habeas corpus.*

EDGAR LEE MASTERS, for relator.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

At the November term of this court the relator presented his petition for a writ of *habeas corpus*, directed to R. L. Allen, warden of the Illinois State Penitentiary at Joliet, to the end that he might be discharged from imprisonment in that institution. Upon consideration of the petition a writ was awarded, commanding the warden to cause the relator to be brought before the court, together with cause of his detention. A return was duly made to the writ by bringing the prisoner into court, and stating, in writing, that he was held in said penitentiary as a convict, under sentence of the Criminal Court of Cook county, by virtue of a warrant of commitment, attached and made part of the return. The warrant attached is of the September term, 1893, of the Criminal Court, and in the usual form of a *mittimus* on a plea of guilty. To this return relator filed a plea averring that

said *mittimus* and the sentence of the Criminal Court were each void, for the reasons stated in his petition, which he was ready to verify. On the issue thus formed the case was submitted for decision.

The undisputed facts in the case are, that at the December term, 1889, of the Criminal Court of Cook county, relator was indicted for conspiracy; that at the February term, 1890, he entered his plea of guilty to the charge, but judgment upon his plea was stayed and he was allowed by the court to depart therefrom without recognizance to again appear, for sentence or any other purpose. No order whatever was made in the case from that time until the July term, 1893, when, on motion of the State's attorney, it was stricken from the docket. At the following September term, on motion of the State's attorney, the case was re-instated on the docket of the court, and after overruling relator's motion for leave to withdraw his plea of guilty entered at the February term, 1890, as well as his motion in arrest of judgment, the judge then presiding, (not the one before whom the plea was entered,) without further plea, sentenced him to three years hard labor in the State penitentiary at Joliet, and ordered his commitment, as shown in the warden's return to the writ.

It clearly appears that the relator did not escape after his plea of guilty, and that he remained in the city of Chicago, engaged in business, between the time of entering his plea and his final arrest and sentence. It is thus made to appear from the record of the Criminal Court, and all the facts in proof before us, that the attempt upon the part of that court was to indefinitely suspend sentence upon the plea of guilty, and the question now is, having then withheld judgment upon the plea, and permitted the prisoner to go at liberty without in any way requiring him to further appear in answer to the charge, had the court jurisdiction, more than three years thereafter, to cause his arrest and pass sentence upon him. It must be admitted that if such power re-

mained in the court three years, it would continue indefinitely, and might be exercised at any future time,—and that, too, without any reason for doing so, except such as might exist in the mind of the judge causing the re-arrest and pronouncing judgment. Thus, a youth charged with crime, to which he pleads guilty, may be in effect assured by the court before whom he enters the plea, that he ought not to suffer punishment, and be given his liberty, and yet in after years, no matter what may then be his family relations or position in society, that judge, or another of the same court, may consign him to the penitentiary for any term of years within the limit fixed by law. On the other hand, the State has a right to demand, and the welfare of society requires, that those who are convicted or plead guilty to violations of the law shall be promptly and certainly punished.

There is nothing whatever in this case indicating that the court acted from any improper motive, but the foregoing considerations argue so strongly against the practice that we should not hesitate, even in the absence of other reasons or authority, to hold that the sentence pronounced at the September term, 1893, was without jurisdiction and void. But the authorities clearly sustain this conclusion. Our statute provides: "All trials for criminal offenses shall be conducted according to the course of the common law, except when this act points out a different mode." (Sec. 188 of Crim. Code, 1 Starr & Curtis, 863.) There is nothing in the act authorizing an indefinite postponement of sentence upon a conviction or plea of guilty. In Archbold's Criminal Practice (par. 180) the author says: "If no motion be made in arrest of the judgment, or if made and decided against the defendant, the judge at the assizes, or the recorder or chairman of the sessions, proceeds to pass sentence. Sometimes this is done immediately after each trial, sometimes at the end of each day, sometimes on some other day of the assizes or sessions. The first seems the

better method." "The judgment or sentence of the court is usually given soon after the conviction,—at least during the same term of the court at which the prisoner is convicted,—unless the rendering of the judgment is stayed by the filing of a bill of exceptions for the purpose of taking the opinion of the Supreme Court upon the case." "No court has authority to suspend sentence indefinitely against criminals who have been found guilty by a jury or have pleaded guilty. A suspension of sentence or stay is not authorized except upon a *certiorari*, or writ of error, or an application in arrest of judgment, or for a new trial." (Colby on Crim. Law, 390-392.) In *People* v. *Monsetts*, 30 How. Pr. 118, BALCOM, J., uses the following language : "I am of the opinion the court does not possess the power to suspend sentence indefinitely in any case. As I understand the law, it is the duty of the court, unless application be made for a new trial or a motion in arrest of judgment be made for some defect in the indictment, to pronounce judgment upon every prisoner convicted of crime by a jury, or who pleads guilty. An indefinite suspension of the sentence prescribed by law is a *quasi* pardon, provided the prisoner be discharged from imprisonment. No court in the State has any pardoning power—that power is vested exclusively in the Governor." This language is peculiarly applicable to all convictions for crime in this State. Our constitution confers the pardoning power upon the executive branch of the State government, and the Governor alone can prevent the infliction of punishment after a legal conviction. Courts may undoubtedly set aside verdicts of guilty and grant new trials or arrest the judgment, but they have no power to allow the conviction to stand, and at the same time defeat its operation by an indefinite postponement of sentence. If the conviction is wrongful or the punishment fixed by the jury excessive, or if material and substantial errors have intervened in the finding and return of the indictment or upon the trial,

the court has ample power, and it is its duty, to interfere; but when that relief is denied the prisoner, it is the plain duty of the court to pronounce judgment.    In the case of *Weaver* v. *People*, 33 Mich. 295, Weaver had entered a plea of guilty to an indictment in the circuit court on July 8, 1874, before Judge Stone.    He was sentenced by Judge Tamant on October 25, 1875.    In reviewing the case the Supreme Court of that State said:    "The failure to take steps during the October term, 1874, was a practical abandonment of the prosecution, and corroborates this opinion that such must have been understood as the object of the suspension.    To sentence a prisoner to the penitentiary under such circumstances, and when the trial judge has distinctly said he ought not to be so sentenced, is not supplying his omissions, but is overruling his decision. This, we think, not admissible, and the sentence was unauthorized, and the judgment must be reversed and the prisoner discharged."

These authorities are cited in the brief of counsel for relator, and we have been referred to none to the contrary.    Others, to the same effect as those quoted from, could be cited.    Until the legislature shall vest courts in this State with powers not now given them, it is their duty, in the trial of criminal cases, upon a conviction or plea of guilty, to pronounce judgment at that time, unless, upon motion for new trial, in arrest of judgment, or for other cause, the case is continued for further adjudication, and the defendant, by recognizance or being held in custody, required to continue to answer the charge, and if they fail to perform that duty, but discharge the prisoner or permit him to go indefinitely, their power and jurisdiction over him cease, and a subsequent sentence is without judicial authority.

It follows that the relator was unlawfully imprisoned, and entitled to an order from this court discharging him, which has accordingly been entered.

*Relator discharged.*