*Ex parte* CLENDENNING.

No. 268.    Opinion Filed September 11, 1908.

(97 Pac. 650.)

CRIMINAL LAW—Sentence and Commitment—Jurisdiction after Discharge. When a judgment of imprisonment is imposed by a court on plea of guilty or conviction in a criminal case, and the same is not stayed as provided by law, the defendant should forthwith be committed to the proper officer for incarceration; and where this is not done, and the court makes an order under which the defendant is discharged from custody, it has no power or jurisdiction, after the lapse of the time involved in the sentence and after the term, to issue commitment on such judgment.

Williams, C. J. dissenting.

(Syllabus by the Court.)

Application by William Clendenning for writ of *habeas corpus*. Petitioner discharged.

*Wade S. Stanfield* and *Barnum & McGraw*, for petitioner.

*Chas. West, Atty. Gen.*, and *W. C. Reeves, Asst. Atty. Gen.*, for the State.

DUNN, J.   This case is an original proceeding in *habeas corpus*, brought by William Clendenning, who alleges that he is unlawfully restrained and deprived of his liberty by Henry Clay King, as sheriff of. Creek county, state of Oklahoma.   From the record in the case we gather that on December 16, 1907, the defendant was brought into the county court of that county, and in case No. 15 the following judgment was entered against him:

"Defendant appeared in person, but without attorney, and entered a plea of guilty of selling intoxicating liquors, whereupon the court ordered that he be fined. $50 and pay costs, amounting to $4.15, a total of $54.15, and to be committed to jail until said fine and costs are paid; and it.was further ordered by the court that defendant be confined in the county jail for a period of 30 days, said sentence to be suspended on good behavior."

Thereafter, and on January 21, 1908, the defendant was again arraigned before the court of said county in case No. 68 charged with the same offense, when the court entered against him the following judgment:

"Defendant waived arraignment and entered a plea of guilty whereupon the court ordered that he pay a fine of $75 and costs, and that he be given 30 days in jail; jail sentence suspended during good behavior.   Fine and costs were paid, and defendant was conditionally discharged as shown above."

In neither of these cases was commitment issued.

Thereafter, and on June 27, 1908, after the expiration of the terms of court at which both of the foregoing judgments were rendered, and after the expiration of about five months from the date on which the last judgment was rendered, and six months subsequent to the day of the first, the court pronounced the following judgment in case No. 68:

"Now, on this 27th day of June, A. D. 1908, the same being one of the judicial days of the regular May, A. D. 1908, term of this court, the above matter came on to be heard, and it appearing to the court that on the 21st day of January, A. D. 1908, said defendant was, by judgment of this court then and there rendered adjudged, ordered, and decreed to be imprisoned in the county jail of Creek county, Oklahoma, and it further appearing to the court that said jail sentence was on good behavior of said defendant, and it now appearing to the court, from the records of this court, that the behavior of said defendant has not been good since said 21st day of January, 1908, the suspension of said jail sentence is hereby set aside and annulled, and the said judgment of this court is hereby this day ordered enforced, and the said defendant is committed to the custody of the sheriff of Creek county, Oklahoma, for imprisonment in said jail for 30 days from and after the date hereof, in conformity with said judgment of this court rendered as aforesaid on said 21st day of January, A. D. 1908. To all of which action of the court the defendant excepts. Whereupon said defendant prayed an appeal to the Supreme Court of Oklahoma, which was by this court denied, and the defendant then and there duly excepted. Whereupon said defendant asked the court to fix the amount of appeal bond, which was by the court denied, to which the defendant excepted."

And immediately thereafter, and on the same day, the court rendered the following judgment in case No. 17:

"Now on this 27th day of June, A. D. 1908, the same being one of the judicial days of the regular May, A. D. 1908, term of this court the above matter came on to be heard, and the same action was taken herein as in No. 68 Criminal, except that the sentence herein was by the court allowed to be concurrent with the sentence in said No. 68 Criminal."

Upon this action by the court and the commitment issued thereunder, the defendant was taken into custody, and this writ was by him sued out to regain his liberty. He contends that after the expiration of the term at which the judgments were rendered, and after the expiration of the time within which they would or could have been served, in the absence of escape on his part, or any appeal or other lawful procedure taken to stay the same, the court lost jurisdiction to issue commitment thereon and to require their

enforcement by his imprisonment.    This raises the question of
whether or not a court, after delivering its judgment and sentence
in a criminal case, may stay the same in the absence of appeal or
other legal proceedings taken looking to its modification, and
after the term at which it was rendered has expired, and after the
time embraced therein has elapsed, whether it has jurisdiction
to then issue commitment in execution of its judgment and in-
carcerate the defendant thereunder.    In support of the action taken
by the court we are cited by the Attorney General to a number of
authorities.    Those which most nearly touch the proposition, and
upon which he most strongly relies, are as follows: *Allen v. State,*
1 Mart. & Y. (Tenn.) 294; *Fults v. State,* 2 Sneed (Tenn.) 232;
*Sylvester v. State,* 65 N. H. 193, 20 Atl. 954; *State v. Hatley et al.,*
110 N. C. 522, 14 S. E. 751; *People ex rel. Forsythe v. Court of
Sessions,* 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856; *Weber v.
State,* 58 Ohio St. 616, 51 N. E. 116, 41 L. R. A. 472.

The case of *Allen v. State, supra,* was one decided by the
Supreme Court of Tennessee.    Allen was convicted of the crime
of manslaughter at the circuit court of Green county in September
1826.    He was sentenced to be imprisoned six months, and to be
branded by burning on the hand, and to pay the costs of the prose-
cution.    He asked for a stay of this judgment to enable him to
make application to the Governor for a pardon, and the court in
granting it was doubtless greatly influenced by the fact that the
burning on the hand, if inflicted, would much impair the privilege
granted by a pardon, should one be secured.    The judgment was
stayed under a statute to enable defendant to make such applica-
tion.    This case is referred to in the case of *Crane v. State,* 94
Tenn. 98, 28 S. W. 317, in which the statute under which the
court acted in that case is cited.    Defendant Crane made applica-
tion for a stay of the execution of his sentence until he could
likewise apply to the Governor for a pardon, and the Supreme
Court of the state in reference to this matter said:

"The power of this court to grant such a suspension in a
proper case is clearly given by section 6096, Mill & V. Code, as

follows: 'In case of the conviction and sentence of a defendant to imprisonment, the presiding judge may, in all proper cases, postpone the execution of the sentence for such time as may be necessary to make application to the executive for a pardon or commutation of punishment.' This power and discretion was exercised by this court in the case of *Allen v. State,* Mart. & Y. (Tenn.) 295. It is apparent, however, from a reading of the statute, that such power and discretion to suspend execution of sentence will only be exercised in proper cases, and will not be extended to cases generally; otherwise, the course of justice would be impeded, and the Governor deluged with applications in all cases before the convicted person could be imprisoned."

· The case of *Fults v. State, supra,* was another case from Tennessee, which was decided upon authority of the case of *Allen v. State, supra.* In that case the defendant was sentenced to a fine of $10 and two days' imprisonment. The fine and costs were secured, and there appears of record the following entry:

"On motion of defendant, David Fults, and for reasons appearing to the satisfaction of the court by admission of the Attorney General and the evidence in the case, he is permitted to enter into recognizance to appear at the next term of this court and then undergo the imprisonment adjudged against him, and abide by and perform the sentence of the court."

He appeared at the next term of court, and was ordered to be imprisoned pursuant to the judgment. From this he appealed, and the Supreme Court held that there was nothing irregular in the proceeding, and that the execution should go. The stay of the execution, it will be noted, was to a time certain, and there was nothing contingent in it. Where there is no statute, such as in this state, some few of the courts have held that a court may fix a day certain in the future on which a sentence shall begin. This was done in this case, and the Supreme Court sustained it.

The case of *Weber v. State, supra,* in our judgment, is not applicable, for the reason that in that case the judgment, the suspension, and the setting of the same aside all took place at the same term of court. The Supreme Court said:

"When the suspension is without express conditions, as in this case, it is within the power of the court to set aside the sus-

pension at any time during the same term, on its own motion, and to order the sentence to be executed."

In the case at bar it will be noted that both terms of court at which these judgments were rendered had expired, that no motion for new trial or other proceeding had taken place to review or reverse the same, and the judgments were final so far as the control of the court over them was concerned.

Neither do we consider the case of *State v. Hatley et al., supra,* as controlling in this case. That was a case in which Philip Hatley and his wife were sentenced to be imprisoned for 12 months in the county jail, with the proviso that if the defendants left the state within 30 days no execution should issue, otherwise the defendants were to be imprisoned. The parties left the state, and in about one month returned to the jurisdiction of the court. Thereupon the clerk of the court issued execution upon the judgment that had been previously rendered. In the consideration of the case the Supreme Court of North Carolina said:

"The court had no power to pass a sentence of banishment, and we think the judgment of the court cannot be fairly construed as a judgment of banishment. If so, it would be void. The only judgment passed by the court was that the defendants be imprisoned 12 months, and the words, 'but if the defendants leave,' etc., constitute no part of the sentence or judgment of the court, but were manifestly intended only as a note or memorandum directing the clerk to postpone the period at which the sentence shall go into execution and not as a banishment for the defendants, or an infliction upon some other community, predicated upon the assumption that it would be desirable and beneficial, both to the community in which they were engaged in the bad calling of keeping a disorderly and disreputable house and to the defendants in giving them an opportunity to reform under new surroundings. Such course is not unfrequent, and, though dictated by the best intentions to benefit the public, as well as offenders, it is not to be commended. We think it quite clear, when the defendants left the state and speedily returned (for it appears that the court was held in the latter part of October and

they returned early in December), they came within the condition upon which the clerk was to issue the capias."

The · facts contained in the foregoing quotation distinguish that case from the one at bar, in that the court did not stay its judgment or the execution, and that the commitment was issued by the clerk; and this within the period of time during which the defendants, had they been immediately committed, would have been serving their sentence. These facts, we believe, take that case out of the rule controlling the one at bar.

Another case relied upon by the Attorney General, *People ex rel. Forsyth v. Court of Sessions, supra,* was one wherein the Supreme Court of the state of New York by mandamus commanded the Court of Sessions to pronounce judgment in a criminal case wherein one Attridge had been convicted of the crime of grand larceny, in which the trial court, out of respect to his youth and previous good character, had suspended sentence. Three days thereafter the county judge, one of the three judges sitting at the trial, in the absence of the other two, brought the defendant before him and sentenced him to imprisonment. He was released upon *habeas corpus* on the ground that the sentence was not concurred in by a majority of the court. He was remanded to the custody of the sheriff, and again brought before the court, and the judgment thereupon was given that sentence be suspended during good behavior. He was thereupon discharged from custody. Thereafter the Supreme Court granted a peremptory writ of mandamus commanding the said trial court to proceed to judgment and to pass sentence upon the defendant as prescribed by law. On the case being appealed to the Court of Appeals, the court of last resort of the state, it said: "The precise question involved, therefore, is the power of a court of record, possessing jurisdiction in criminal cases, to suspend judgment after conviction." And the court held that the trial court possessed this power in the following language:

"Without attempting to collate all the authorities on the subject, it is sufficient to say that the power to suspend sentence

at common law is asserted by writers of acknowledged authority on criminal jurisprudence, by the uniform practice of the courts, and numerous adjudged cases."

The statement of that case will show that it is not applicable to the case at bar, for the reason that the question involved here is not the power to suspend sentence, but the power of the court after sentence to suspend execution.

This case is noted, and the above distinction drawn, in the consideration of the case of *In re Webb,* 89 Wis. 354, 62 N. W. 177, 27 L. R. A. 356, 46 Am. St. Rep. 846, which was a case where execution of the judgment of the court, as in the case at bar, was suspended. The *Forsyth Case, supra,* being cited on the part of the state to sustain the power of the court to suspend execution, just as it is cited by the Attorney General in the case at bar, the Supreme Court of Wisconsin said:

"The case of *People ex rel. Forsyth v. Court of Sessions,* 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856, was not a case where execution of a sentence had been suspended, but where sentence had been postponed; and the power of the court to delay sentence in its discretion was sustained, and numerous authorities were cited to support it. But the present case involves different considerations. Here the execution of a sentence already pronounced is indefinitely suspended, and it may be the pleasure of the court never to direct execution, so that the suspension has the practical effect of a pardon, or of arrest of judgment, indeterminate or final, without the authority of law; and it has been likened to the incorporation into our criminal jurisprudence of the 'ticket of leave' system, without any of its safeguards, leaving the convicted criminal subject to the mere option or caprice of the judge, who may direct the enforcement of the sentence after any lapse of time, however great, or withhold it to the great detriment, it may be, of the interests of the public—a power plainly liable to great abuse."

The case of *Sylvester v. State, supra,* is one wherein the Supreme Court of New Hampshire, in a case on all fours with the one at bar, decided that it was within the power of the court to stay its execution. But one case is relied upon and cited by it to support its opinion, and that is the case of *Commonwealth v.*

*Dowdican's Bail,* 115 Mass. 133. An inspection of that case shows that it was not one wherein the court suspended execution; but it, like the case of *Forsyth v. Court of Sessions, supra,* was one wherein the court suspended sentence. The New Hampshire Supreme Court does not discuss the proposition involved, and cites no other authority to support its opinion. Hence it is practically of little or no weight as an authority.

To supplement the cases presented to us above, we have sought diligently to find other authority; but we have been unsuccessful. Outside of those which the Attorney General has presented to sustain this judgment, we have been unable to find a solitary well-considered opinion. Every case wherein the question is squarely presented and passed upon, and the courts have given it the care and attention its importance deserves, holds, practically without dissent, that "in passing sentence on a person convicted of an offense the court has no power to provide that the imprisonment of the defendant shall begin at some future, indefinite time, depending on the happening of an uncertain contingency; and an arrest under such conviction, made after the expiration of the term of imprisonment named in the sentence, and after the term, is illegal." *In re Strickler,* 51 Kan. 700, 33 Pac. 620; *In re Bloom,* 53 Mich. 597, 19 N. W. 200; *State v. Murphy,* 23 Nev. 390, 48 Pac. 628; *Tuttle v. Lang,* 100 Me. 123, 60 Atl. 893; *Ex parte Gordon,* 1 Black. 503, 17 L. Ed. 134; *State v. Voss,* 80 Iowa 467, 45 N. W. 898, 8 L. R. A. 767; *In re Markuson,* 5 N. D. 180, 64 N. W. 939. We will review some of these cases.

The case of *In re Strickler, supra,* was one wherein the defendant pleaded guilty in the district court of Ford county, Kan., to the charge of assault and battery, whereupon the following sentence was pronounced upon him by the court:

"It is the sentence of the law that you, W. H. Strickler, be by the sheriff of Ford county, Kan., incarcerated in the jail of said county there to remain for the space of 90 days from the date of this sentence. It is further ordered by the court that the oper-

ation of this sentence shall be suspended during such time as the defendant shall keep the peace with all mankind, and desist from all unnecessary use of intoxicating liquor, and refrain from becoming intoxicated. It is further ordered, as a condition of this sentence that whenever the said W. H. Strickler shall violate any one of the above conditions, and upon notice thereof to the sheriff by the prosecuting officer of Ford county, Kan., or by the judge of this court, the said sheriff shall immediately incarcerate the said Strickler in the jail of said county, and he shall remain there committed until the expiration of 90 days from said date of incarceration, and until the costs of this prosecution have been paid by him. The question as to whether the conditions of this suspension have been broken shall be determined by the prosecuting attorney of Ford county, or by the judge of this court, and no judicial investigation shall be required."

After the expiration of the term of court at which this sentence was pronounced, and after the lapse of 90 days, the court issued the following commitment on this sentence to the sheriff of the county:

"And whereas, said defendant, W. H. Strickler, has failed to comply with the conditions of said judgment, you are therefore commanded to take and commit said defendant, W. H. Strickler, to the jail of Ford county, Kan., there to remain until said judgment be complied with."

Upon the commitment issued the petitioner was arrested and placed in jail. He sued out in the Supreme Court a writ of *habeas corpus*, and that court, on the consideration of the case, speaking through Mr. Justice Allen, said:

"The question here presented is whether the district court could lawfully sentence the defendant to imprisonment in the county jail, and then suspend its execution, to be enforced at some future time on the happening of a contingency named in the judgment, Section 256 of the Criminal Code (Gen. St. 1901, § 5701) reads: 'Where any convict shall be sentenced to any punishment the clerk of the court in which sentence was passed shall forthwith deliver a certified copy thereof to the sheriff of the county, who shall, without delay, either in person or by a general or usual deputy, cause such convict to receive the punishment to which he was sentenced.' While it is usual to delay sentence after conviction until motions for new trials, in arrest of judgment, and the

like, are disposed of, and while it is within the power of the court to continue the hearing of such motions, or for any other good and sufficient cause to withhold sentence, yet when a sentence has been pronounced by the court, its operation begins at once, and under the section just quoted it is the duty of the sheriff to immediately proceed to carry the sentence into effect. We are not called on to consider the right of the court, at the term at which the conviction was held, to reconsider or modify its own order. In this case it was attempted to hang a sentence of 90 days' imprisonment over the head of the defendant, to be executed at such time as the prosecuting attorney of Ford county or the judge of the court might see fit. This would leave the defendant in a very uncertain situation. He would be unable to tell for an indefinite period whether he was a free man or a convict, and while the sentence in terms might be for but 90 days' imprisonment, it would be in effect far more severe, because of the uncertainty as to the time of its execution. Such a sentence is wholly unauthorized by law. The commitment issued thereon is illegal, and does not justify the imprisonment of the petitioner. He will be discharged."

The facts in the case of *Tuttle v. Lang, supra,* are stated by the Supreme Court of Maine as follows:

"The petitioner was arrested and brought before the Skowhegan municipal court, charged with the offense of the unlawful sale of intoxicating liquors. Before pleading to the complaint the petitioner, the prosecuting complainant, and the judge came to an agreement by which the petitioner should plead guilty and be sentenced to a fine, costs, and imprisonment, but that no *mittimus* in execution of the sentence should issue until the petitioner should again be guilty of unlawfully selling intoxicating liquors. The petitioner thereupon pleaded guilty, sentence of fine, costs and imprisonment was imposed, a memorandum of the agreement was noted on the judge's docket, and the petitioner was released from arrest and allowed to go without day, without payment of fine and costs, and without imprisonment. No *mittimus* or other precept in execution of the sentence was issued, or even prepared."

After the expiration of nearly two years the judge, being of the opinion that the petitioner was again unlawfully selling intoxicating liquors, issued commitment on the previous sentence, delivering it to the sheriff, who took the prisoner into custody and

committed him to jail. He sued out a writ of *habeas corpus,* and the Supreme Court of Maine on these facts held:

"If, after conviction and sentence, any court, whether of general or limited jurisdiction, permits the convict to go at large without day, it can never thereafter issue a *mittimus* for his commitment. In such case, having completed its judicial functions, it has voluntarily surrendered all further control over the case and person."

The case of *In re Markuson, supra,* was one where on June 29, 1895, the petitioner was convicted of a contempt of court in violating the terms of an injunction order. The syllabus in the case sufficiently states the facts and the judgment to show the holding, and is as follows:

"On June 29, 1895, petitioner was convicted of a criminal contempt of court, and judgment was entered of record against him in substance as follows: 'That petitioner be imprisoned in the county jail of Barnes county for a period of 90 days, commencing with today at noon; that he pay a fine of $200, and if default be made in the payment of the fine he shall be imprisoned as many days as $2 is contained in $200, or 100 days.' Immediately after said judgment was entered the court, of its own motion, made certain orders in the case, which were entered of record, to the effect: First that in case an appeal was taken the time should commence to run from the date of the *remittitur* being filed in the district court; second, that the judgment be suspended 30 days, unconditionally, to facilitate an appeal to the Supreme Court; third, the court ordered that the bail bond given to secure the petitioner's attendance from day to day during the trial in the district court be and remain valid and binding upon the petitioner, and that petitioner was ordered to obey the further orders of the district court, whether made by that court, or made to conform to orders of the Supreme Court. Held, that the time of said imprisonment began to run at noon on June 29, 1895, and that the several orders purporting to suspend or postpone the operation of the judgment were without authority of law, and null and void."

In the consideration of the case the court recognizes the general rule, supported by practically all of the authorities, that where not controlled by statute, the date for the beginning of the ser-

vice of the term of imprisonment is not fixed in the sentence. its time will commence to run, when not legally stayed, on the day of sentence. See 25 Am. & Eng. Ency. of Law, 303, note 2. And this, in our judgment, is rendered certain in this state by the terms of our statute (section 5583, Wilson's Rev. & Ann. St. Okla. 1903), which provides that upon the judgment "the defendant must forthwith be committed to the custody of the proper officer and by him detained until the judgment be complied with." The court in the case last cited held that the sentence "began its operation when it was pronounced, and continued to be in full force from that day until it ceased to operate by its own terms."

The reasoning of the Supreme Court of Nevada in the case of *State v. Murphy, supra,* is peculiarly applicable to the case at bar, in view of the fact that their statute is practically the same as our own. This was a case where Murphy had been convicted of selling whiskey to an Indian, and a judgment of imprisonment for a term of two years was pronounced against him therefor. Thereupon Murphy, expressing his intention of taking an appeal, moved the court for a stay of execution and to admit him to bail. The court granted a stay of execution of judgment for 10 days, and ordered that he be admitted to bail in the sum of $3,000. Bond was given in accordance therewith, and Murphy was released from custody. He did not appeal, and on suit being brought on the bond it was contended on the part of the principle and his sureties that the bond was void, because the court had no authority or jurisdiction to make an order staying execution of judgment. In the consideration of this case the court says:

"The contention is that the trial court had no authority to make an order staying the execution of a judgment of imprisonment. and no authority to release or order the release of a defendant, under recognizance or otherwise, after judgment of imprisonment had been rendered against him, except after an appeal therefrom had been taken, and therefore any recognizance given for that purpose and at such time is void. This contention also involves a construction of our criminal practice act and must be sustained. Section 451 of the criminal practice act (Gen. St. 1885,

§ 4331) provides that, 'when a judgment has been pronounced, a certified copy of the entry thereof in the minutes shall be forthwith furnished the officer whose duty it is to execute the judgment, and no other warrant or authority is necessary to justify or require the execution thereof, except when judgment of death is rendered.' Section 453 of the same act expressly provides that, if the judgment be imprisonment, the defendant shall forthwith be committed to the custody of the proper officer, and by him detained until the judgment be complied with. Gen. St. 1885, § 4333. We are unable to find any other provisions of the law bearing directly upon the time and the manner of enforcing the judgment of the district court in cases of this character, or in any manner modifying the same, excepting such provisions as direct the enforcement of such judgment by order of the appellate court on appeal. No discretion is reposed in the district court as to the time its judgment shall become operative and enforceable, and any order thereof in contravention of the direct provisions of the statute above cited is without authority and void, and the release of the defendant, with or without bond, pursuant to such order, is unwarranted, and any bond, recognizance, or bail given for such release for the purpose of such order is without authority and void. * * * In the case at bar the complaint avers that the defendant was released from custody upon the execution and acceptance of the bail bond. The court had no right, no authority, and no power to order a stay of execution or the judgment of imprisonment for any length of time; nor had it any authority to release the defendant from custody, under bail, until he had appealed."

The practical identity of the statutes construed in the foregoing case with our own renders the foregoing decision particularly valuable.

One of the cases, recognized in many of the authorities cited as a leading one on the proposition here involved, is *State v. Voss, supra,* decided by the Iowa Supreme Court. A number of defendants involved in that case were enjoined from unlawfully selling intoxicating liquors. They violated the terms of the injunction, and upon the hearing the court found them guilty and adjudged punishment therefor by imprisonment and a fine of $500, and an order was made that they stand committed to the county

jail unless the fine and costs were sooner paid. . The judgment contained a further condition in this language: "The execution of this judgment is to be suspended during the pleasure of the court; but whenever the court, or one of the judges thereof, so directs, execution and warrant of commitment are to issue." The case was taken to the Supreme Court by certiorari, and it was contended that the order of the court suspending judgment was void; and the court, through Mr. Justice Beck, in the consideration of this matter, said:

"The case is this: We find a judgment for a fine against defendant, which can only be enforced at the pleasure of the court. The judgment is thus suspended, and the state is defeated of the remedy provided by law, upon the exercise of the pleasure of the district court. If the power to do this exists in a case of contempt, it must exist in all cases punishable by fine and imprisonment. The law is no respecter of persons. One violator of law possesses no rights or immunities not held by another. It follows, then, that all fines and penalties prescribed by law may be collected only when it accords with the pleasure of the court in which judgment is rendered therefor. The claim of the validity of the condition of the judgment leads to the most absurd results. It is hardly necessary to say that it is based upon no statute."

The case of *In re Webb, supra,* from the Supreme Court of the state of Wisconsin, was one where the petitioner was convicted of the crime of adultery on the 16th of March, 1894, and was sentenced to pay a fine of $200 and to be committed to the common jail for six months. The defendant paid the costs of the prosecution, and the court directed "that the sentence of imprisonment be suspended until the further order of the court." After the expiration of that term, and after six months had expired, the court ordered that the defendant be required to fully comply with the sentence in payment of the fine imposed and committing him until the same was paid, for a period not longer than six months, in accordance with the previous sentence. An original writ of *habeas corpus* was sued out in the Supreme Court of that state, and in the consideration of that case, Justice Pinney, in

holding that the judgment of the court committing the relator to jail under the conditions mentioned was void, said:

"The sole power is vested in the Governor 'to grant reprieves, commutations, and pardons after conviction for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper.' Const. art. 5, § 6. And the action of the court in the premises, after it had regularly pronounced the punishment provided by law for the offense in question, is clearly obnoxious to the objection that it is an attempted exercise of power not judicial, but vested in the executive. When the sentence was pronounced the defendant was in custody; and it became *eo instante* his duty to pay his fine, and for failure to do so the term of his imprisonment at once began. It had fully expired before the order of October 12, 1894, was made, under which he has been committed and is now held in confinement. The sentence has been in part complied with, and the attempted withdrawal indefinitely of the remainder was, we think, without legal warrant and void."

The syllabus of the case is as follows:

"After sentence has been pronounced in a criminal case the court cannot, as a matter of leniency to the defendant, suspend indefinitely its execution. A defendant was sentenced to pay a fine and the costs, and to stand committed to jail until payment, the period of imprisonment being limited to six months; and the court directed that if the costs were paid at once the sentence of imprisonment be suspended until further order. The defendant paid the costs accordingly, but failed to pay the fine. Held, that an order, made more than six months later, that defendant pay the fine and stand committed to jail until payment in accordance with said sentence, was without authority."

Section 143 of Bunn's Constitution of Oklahoma (Const. art. 6, § 10) provides:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. He shall communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole, or pardon, granted, stating the name of the convict, the crime of which he was convicted, the date and place

of conviction and the date of commutation, pardon, parole or reprieve."

The statutes of Oklahoma relating to the enforcement of judgments in criminal cases are contained in volume 2 of Wilson's Revised and Annotated Statutes of Oklahoma of 1903 at chapter 68, and are as follows:

"Sec. 5581 (Sec. 445). · When a judgment, except of death, has been pronounced, a certified copy of the entry thereof. upon the minutes, must be forthwith furnished to the officer whose duty it is to execute the judgment, and no other warrant or authority is necessary to justify or require its execution."

"Sec. 5583 (Sec. 447). If the judgment be imprisonment or a fine and imprisonment, until such fine be paid the defendant must forthwith be committed to the custody of the proper officer, and by him detained until the judgment be complied with."

From the foregoing provisions of the Constitution, it will be observed that no one within the state is given power to reprieve, commute, parole, or pardon an offender with the exception of the Governor, and it will be further observed that when judgment has been pronounced, a certified copy of the entry thereof must be forthwith furnished the officer whose duty it is to execute it, and where the judgment is imprisonment the defendant must forthwith by such officer be committed and detained under the execution. There is no latitude allowable under these provisions. They embody the plain, unambiguous letter of the law. Under such statutes, where the execution is not stayed by proper proceedings to reverse, vacate, or modify, service of sentence under a judgment of imprisonment begins on the day on which it is rendered and continues until fully executed according to law. Nor can there be any doubt of the salutary character of this law. Speedy and certain punishment, following the infraction of a law, best meets its ends and purposes, and leniency, through delay toward an offender, seldom works kindness to him or safety to the public; but where circumstances do arise which render the sentence or operation of the law unduly harsh or cruel, and by reason of its universality the operation of the law is thought to work ill

in particular cases the power is vested in the Governor to reprieve, commute, parole, or pardon, except in certain cases; but he, in the exercise of this right and duty, is hedged around by the provision that he must report his doings thereunder to the Legislature. Such power is not vested in a court, and it is as much within the law as the poorest defendant who appears before it for sentence. Statutes provide penalties for the infraction of law, and where incurred they are not subject to enforcement on the whim, caprice, or discretion of the court; and if a court undertakes to do so it would lead ultimately, as is stated by the Supreme Court of Iowa, to the most absurd results.

Let us look at the facts in this case, and see if this is not true. Our Constitution provides that one who is guilty of unlawfully selling intoxicating liquors "shall be punished, on conviction thereof, by fine not less than fifty dollars and by imprisonment not less than thirty days for each offense." In the case at bar the defendant, being charged with the violation of this law, in the first case entered his plea of guilty, and the court assessed the minimum fine and imprisonment thereunder, and then, instead of incarcerating him in accordance with the plain terms of the law, deliberately accepted the fine and costs and permitted him to go during good behavior. What do we now find? But a trifle more than a month had elapsed when the same defendant is again before the same court, charged with the same offense, and entered the same plea. Again the court assessed a fine and the imprisonment required under the law, and once more solemnly entered an order releasing the defendant during good behavior. Were such a course permitted to trial courts, and did it receive the sanction of this court, it would make the enforcement of the law a mere farce, bring all courts in disrepute, and consummate the results noted. Such enforcement would result in licensing the sale of intoxicating liquors by the payment of fines at stated intervals. This course we cannot sanction. The Constitution will not permit it, and the statute plainly prohibits it. The execution should have issued for the imprisonment of this defendant on the day of

his conviction. His incarceration should have taken place under it. That it did not is to be regretted; but the court has no power or jurisdiction after the expiration of the time of the sentence and of the term of court when rendered to call it back and issue a commitment thereunder. We fully concur in the sentiments expressed by Chief Justice Wallin of the Supreme Court of North Dakota in the case of *In re Markuson, supra,* where he says:

"It is an unpleasant duty to enter an order discharging the petitioner from custody, in view of the fact that he was convicted by a competent court, and has not actually suffered the punishment indicated in the final judgment of the court. But our duty is plain, and we may not shirk from its performance."

While in this instance if we had the power to sanction the execution of the belated commitment, which we have not, it would result in the punishment of one guilty man, yet the conclusion which the law compels will doubtless prevent the escape from punishment of many guilty men in the future; but, whatever the result, it is law and the petitioner will be discharged.

Hayes, Kane and Turner, JJ., concur; Williams, C. J., dissents.