Ex parte HOWARD A. TUCKER.

No. A-9916.   Feb. 4, 1942.

(122 P. 2d 174.)

Hall & Cotten, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Lewis R. Morris, Co. Atty., and Walter Marlin, Asst. Co. Atty., both of Oklahoma City, for the State.

BAREFOOT, P. J. Petitioner has filed in this court his petition for writ of habeas corpus alleging that he is unlawfully imprisoned and restrained of his liberty in the county jail of Oklahoma county by George Goff, sheriff of said county. He alleges that such imprisonment is by reason of the following facts:

"That according to the best of the knowledge and belief of your petitioner, he was taken into custody and is now being held in said jail by said sheriff, George Goff, under and by virtue of a purported commitment issued by the court clerk of Oklahoma county, State of Oklahoma, and placed in the hands of said sheriff. A true and correct copy of said commitment is hereto attached, marked Exhibit 'A' and made a part hereof. That said commitment was issued on the 5th day of August, 1940, in cause No. 6603, filed in the county court of Oklahoma county, Oklahoma, entitled 'The State of Oklahoma, Plaintiff, vs. Howard A. Tucker, Defendant,' in which said cause the said defendant was charged by information filed by the county attorney of Oklahoma county, Oklahoma, on July 8, 1924, with the offense of libel. A true and correct copy of the said information, together with the proceedings thereon, the verdict of the jury and the judgment of the court, are contained in the case-made filed in this Honorable Court on September 14, 1925, in cause No. A-5806 entitled 'Howard A. Tucker, Plaintiff in Error, vs. The State of Oklahoma, Defendant in Error,' which record and case-made is hereby referred to and by reference made a part of this application.

"That your petitioner is not held or incarcerated by said sheriff under any other actual or purported warrant, commitment, or authority, except as hereinbefore stated.

"Your petitioner alleges that said restraint and imprisonment of petitioner is illegal, unjust and unauthorized for the following reasons, to wit:

"1. Said commitment is insufficient in law to authorize the arrest or incarceration of your petitioner thereunder.

"2. The purported judgment and sentence of the court upon which said commitment was issued does not provide for imprisonment, and your petitioner cannot, therefore, be legally placed in custody or incarcerated thereunder.

"3. The sentence upon which said commitment was issued, as shown by said case-made and as shown by the copy of the commitment attached hereto, was as follows: 'Judgment and sentence that you pay a fine of $100.00 and costs' and was pronounced by the county court of Oklahoma county, State of Oklahoma, on the 18th day of May, 1925. Thereafter, your petitioner appealed therefrom to the Criminal Court of Appeals of the State of Oklahoma, and said appeal was docketed as hereinbefore stated as No. A-5806. That thereafter, said conviction was affirmed by said Criminal Court of Appeals, and on the 27th day of March, 1929, the mandate of said Criminal Court of Appeals, showing such affirmance, was returned to the county court of Oklahoma county, State of Oklahoma, and filed in said cause in the office of the court clerk of said county.

"That thereafter, and on the said 27th day of March, 1929, a commitment was issued by the said court clerk in said cause committing this defendant to the county jail of Oklahoma county, State of Oklahoma, until said fine and costs should be satisfied, and said commitment was thereupon placed in the hands of the sheriff of Oklahoma county, Oklahoma. Your petitioner says that by operation of the law, service of the sentence of imprisonment,

if any there be, commenced on said 27th day of March, 1929, and that the time for service for such sentence and the period in which petitioner might be imprisoned under said sentence, if any existed, has long since expired.

"4. That shortly after the issuance of said commitment on March 27, 1929, and its receipt by the Sheriff of Oklahoma county, Oklahoma, to wit, on or about June, 1929, this petitioner went to the office of the Sheriff of Oklahoma county, Oklahoma, and placed himself in the control and custody of the said sheriff of Oklahoma county, Oklahoma, under the said commitment; that he was allowed by said sheriff, acting by and through one of his duly commissioned deputies, to return to his home at 1715 Northwest 21st street in Oklahoma City, and to go about his daily affairs. That petitioner thereafter and during all the period of time in which he might legally, if at all, have been imprisoned in satisfaction of or in connection with said judgment of conviction and sentence, fine and costs, was in Oklahoma City, Oklahoma county, Oklahoma, and at the command and call of the said sheriff.

"That by reason of the foregoing, the imprisonment, which could legally have been imposed, if any, has been served and the fine and costs thereby satisfied many years ago, and the time in which such imprisonment might have been imposed, if any could have been imposed, has long since expired.

"5. That ever since the mandate hereinbefore mentioned was returned and filed in this cause and the commitment issued on March 27, 1929, this petitioner has been a resident and citizen of Oklahoma City, Oklahoma, and has at all times resided at No. 1715 Northwest 21st street in said city; that he has at all times during said period resided and been within the jurisdiction of the county court of Oklahoma county, Oklahoma, and within the call and reach of the sheriff of said county; that such residence has at all times been open and public, and known to the public and to the officials of Oklahoma county, State of Oklahoma; that he has maintained a

telephone at said residence in his own name and same has been shown in the various telephone directories; that his name and place of residence have continuously, during said period, been shown in the annual city directories; that during said period his family has resided with him at said residence and his son has grown up there and attended the public schools of Oklahoma City; that during all of said period, and except as stated in paragraph 3 hereof, no effort has been made until August 5, 1940, as aforesaid, to take this petitioner into custody or to incarcerate him in connection with, or in satisfaction of said sentence, fine and costs. That in connection with the appeal hereinbefore mentioned, your petitioner executed a supersedeas bond with good and sufficient sureties, which was duly approved and filed in said cause. Said bond is shown at pages 77 and 78 of the case-made filed in this court and heretofore referred to and made a part hereof. That for several years after the said 27th day of March, 1939, the sureties on said bond were entirely solvent and said fine and costs could have been collected in full by civil proceedings thereon.

"That it would be and is against public policy to at this time incarcerate, or attempt to incarcerate, this petitioner under said judgment and sentence for failure to pay said fine and costs, or for any other reason connected therewith."

To this petition the state has filed a response in which is set out the facts as alleged in the petition with these additional allegations:

"Respondent specifically denies:

"First: That said commitment is insufficient in law to authorize the arrest or incarceration of the petitioner, Howard A. Tucker.

"Second: That the judgment and sentence of the county court, in cause No. 6603, upon which said commitment was issued, does not provide for imprisonment, but in this connection alleges that the judgment and sen-

tence in said cause expressly provides, among other things, that:

"It is therefore considered, ordered and adjudged by the court that the defendant, Howard Tucker, pay a fine of One Hundred Dollars ($100.00) and be imprisoned in the county jail of the county of Oklahoma, upon failure to pay said fine, from Jan. 5th, 1925, and that he pay the costs herein, taxed at $——, and in default of the payment of the costs and fine herein, he be further imprisoned in said county jail for a period not exceeding one day for every $1.00 of costs and fine herein, or the said time to be served on the county roads of Oklahoma county.'

"Third: Respondent specifically denies that shortly after the issuance of the commitment on March 27, 1927, and its receipt by the sheriff of Oklahoma county, Oklahoma, that on or about June 19, 1929, the petitioner went to the office of the sheriff of Oklahoma county, Oklahoma, and placed himself in the control and custody of said sheriff of Oklahoma county, State of Oklahoma, under said commitment, and respondent further denies that petitioner was allowed by said sheriff, or anyone acting by or through him, to return to his home at 1715 Northwest 21st street, in Oklahoma City, or any place else, and to go about his daily affairs.

"Your respondent further denying that said petitioner was taken into custody on or about June 19, 1929, states, that the imprisonment which should have been legally imposed at the time he was taken in custody, has not been served, and the fine and costs have not been satisfied, and that the time in which such imprisonment might have been imposed has not expired, but in this connection alleges that petitioner was rightfully and lawfully taken into custody on August 5, 1940, by the sheriff of Oklahoma county, Oklahoma, by reason of commitment issued out of the county court of Oklahoma county, Oklahoma.

"Fourth: Respondent is not informed, therefore, cannot deny that this defendant has resided at 1715 North-

west 21st street, in Oklahoma City, Oklahoma, since the time the mandate came down from the Criminal Court of Appeals, but is informed, and therefore, does specifically deny, that during this period of time petitioner was a citizen of Oklahoma county, State of Oklahoma, and the United States of America, and in this connection says that in 1937, defendant was convicted, in the Federal Court, for the Western District of Oklahoma, on the charge of using the mails to defraud, on sixteen counts, and was sentenced to serve two years on each count, to run concurrently, and petitioner was put on probation for a period of three years, the probation period expiring May 17, 1940.

"Respondent is not advised as to whether or not defendant's citizenship has been restored since his conviction in the federal court, and in this connection respondent further states that the question of public policy could not be involved in the execution of the judgment and sentence in cause No. 6603, under the facts and circumstances alleged in said petition, but that the county court has jurisdiction in said cause, to imprison the defendant upon his failure to pay the fine assessed against him, and that he is at this time being lawfully held by the sheriff of Oklahoma county, under the commitment issued August 5, 1940."

Elaborate briefs have been filed both by the petitioner and by the state, and the questions raised are both interesting and important. In addition to the pleadings above referred to, evidence has been heard by this court which substantially sustains the allegations of the petition. There is very little dispute between the defendant and the deputy sheriff to whom petitioner says he surrendered himself on June 10, 1929.

The contention of the state which will first be considered is that by reason of certain former decisions of this court and the applicable facts, the defendant cannot at this time be released by habeas corpus. The cases

relied upon are: Ex parte Barnes, 67 Okla. Cr. 235, 93 P. 2d 765; Ex parte Alexander, 5 Okla. Cr. 196, 113 P. 993; Ex parte Eldridge, 3 Okla. Cr. 499, 106 P. 980, 27 L. R A., N. S., 625, 139 Am. St. Rep. 967; Ex parte Holden, 31 Okla. Cr. 133, 237 P. 622; Ex parte Porter, 60 Okla. Cr. 327, 64 P. 2d 1235. Also, Ex parte Keel, 62 Okla. Cr. 277, 71 P. 2d 313.

We have carefully considered these cases, and while they may be distinguished to a certain extent from the facts in the case at bar, they announce a principle of law which, to a great extent, upholds the contention of the state in this case when they say that the exact time of the commencement of the term of imprisonment is directory only, and that the time fixed for the execution of a sentence is not one of its essential elements, and that where the penalty is imprisonment, the sentence may be satisfied only by the actual serving of the imprisonment imposed unless prevented by death or some legal authority, and further that where a defendant has not served his sentence he may be arrested and ordered into custody on the unexecuted judgment. They assert principles which, if applied to the facts of a given case, would uphold the contention that one has to actually serve the imprisonment or pay the fine assessed before he can be released.

We have also examined the Oklahoma cases relied upon by petitioner to support his contention: Willard v. State, 67 Okla. Cr. 192, 94 P. 2d 13; Collins v. State, 24 Okla. Cr. 117, 217 P. 896; White v. State, 45 Okla. Cr. 289, 283 P. 581; Ex parte Coley, 67 Okla. Cr. 482, 94 P. 2d 968; Ex parte Clendenning, 22 Okla. 108, 1 Okla. Cr. 227, 97 P. 650, 19 L. R. A., N. S., 1041, 132 Am. St. Rep. 628; Ex parte Eley, 9 Okla. Cr. 76, 130 P. 821; Ex parte Wilkerson, 38 Okla. Cr. 86, 258 P. 1069.

In the Willard Case, supra, the facts were that the defendant entered a plea of guilty on the 20th day of January, 1936, and he was to report on May 1, 1936, to begin his sentence of a fine of $50 and 30 days in jail, which he did. A few days thereafter he was injured while at work on the road and spent 36 days in the hospital. When released, he was told by the sheriff to go home and forget all about it, which he did. On February 18, 1938, it was contended defendant should be sentenced in conformity with the original judgment, and which order and sentence was entered. Defendant excepted and appealed to this court. It was here held in an opinion by Judge Doyle that the case should be reversed. It was there said [67 Okla. Cr. 192, 94 P. 2d 17]:

"In the case at bar all the record shows is that after defendant pleaded guilty no further order was made in the case for some twenty-five months and in the meantime four terms of court had passed before judgment was rendered.

"It is suggested that the delay which occurred between the plea and the judgment must be deemed to have occurred with the consent of the defendant, and that he may not complain.

"We think that when judgment is postponed indefinitely, without any order of continuance, for some four terms, then no question of consent can be of aid in the case even if it be conceded that what took place was tantamount to defendant's consent to the initial deferment of judgment and sentence.

"When it appears that judgment and sentence was not deferred to a day certain or to a term certain; it was in effect deferred indefinitely, because the trial court omitted to make any order deferring judgment and sentence.

"It follows from the foregoing review and what is said, that the judgment must be reversed and the cause

remanded to the county court of Greer county with direction to dismiss, and so it is ordered."

In the above case, quoting from the case of Collins v. State, 24 Okla. Cr. 117, 217 P. 896, it was said:

"Under the foregoing provisions it is the duty of the court, on a conviction or plea of guilty, to impose sentence within a reasonable time. However, there can be no doubt that a court has the right to delay the pronouncement of judgment for the purpose of hearing and determining motions for a new trial or in arrest of judgment, or for other proper causes; but to suspend indefinitely the pronouncing of judgment and sentence after conviction is not within the power of the court. Grundel v. People, 33 Colo. 191, 79 P. 1022, 108 Am. St. Rep. 75; People ex rel. Smith v. Allen, 155 Ill. 61, 39 N. E. 568, 41 L. R. A. 473; Smith v. State, 188 Ind. 64, 121 N. E. 829, 3 A. L. R. 999; Com. v. Maloney, 145 Mass. 205, 13 N. E. 482; People v. Kennedy, 58 Mich. 372, 25 N. W. 318; State v. Hockett, 129 Mo. App. 639, 108 S. W. 599; State ex rel. Dawson v. Sapp. 87 Kan. 740, 125 P. 78, 42 L. R. A., N. S., 249; United States v. Wilson, C. C., 46 F. 748."

It is true that in these cases the judgment and sentence was not entered by the trial court, but in the Willard Case, supra, the court quotes approvingly from the case of People v. Barrett, 202 Ill. 287, 67 N. E. 23, 63 L. R. A. 82, 95 Am. St. Rep. 230, as follows:

"There can be no doubt that a court has the right, in a criminal cause, to delay pronouncing judgment for a reasonable time, for the purpose of hearing and determining motions for a new trial or in arrest of judgment, or to give the defendant time to perfect an appeal or writ of error, or for other proper causes; but to suspend indefinitely the pronouncing of the sentence after conviction, or to suspend indefinitely the execution of the judgment after sentence pronounced, is not within the power of the court. To allow such a power would place the criminal at the caprice of the judge. If the judge can de-

lay the sentence one year, he could delay it for 15 years, or any length of time. * * *

"The foregoing cases are quoted with approval by the Supreme Court of Georgia in Neal v. State, 104 Ga. 509, 30 S. E. 858, 42 L. R. A. 190, 69 Am. St. Rep. 175, where the court says: 'The power to indefinitely postpone the punishment prescribed by the law, whether exercised by suspending the imposition or by suspending the execution of a sentence, is the power to perpetually prevent punishment—a power which, under such provisions as are found in the Constitution of this state, does not exist in the courts.' * * * In People ex rel. Smith v. Allen, 155 Ill. 61, 39 N. E. 568, 41 L. R. A. 473. * * * It was held, after a review of the authorities, that it was the duty of the courts, in criminal cases, 'upon a conviction or plea of guilty, to pronounce judgment at that time, unless, upon motion for new trial, in arrest of judgment, or for other cause, the case is continued for further adjudication, and the defendant, by recognizance or being held in custody, required to continue to answer the charge, and if they fail to perform that duty, but discharge the prisoner or permit him to go indefinitely, their power and jurisdiction over him cease, and a subsequent sentence is without judicial authority.' * * *

"Long and unreasonable delays in passing upon motions for new trials or in arrest of judgment are calculated to obstruct the administration of public justice, and to operate as a denial of the right of the citizen to a speedy trial. It is said, however, in this case, that all the delay was with the consent of the relator, and that he cannot now be heard to complain. It cannot, of course, be contended that the doctrine of estoppel has any application here; nor can it be held that the relator could waive any requirement respecting the jurisdiction of the court to enter judgment and pronounce the sentence. If the court had no power thus indirectly to suspend sentence and to permit the relator to go at large upon his own recognizance or upon parole, such power could not be conferred by his consent, nor by his express request.

Harris v. People, 128 Ill. 585, 21 N. E. 563, 15 Am. St. Rep. 153; Morgan v. People, 136 Ill. 161, 26 N. E. 651. The rendering of judgment and the final sentencing of the defendant cannot be made a mere matter of discretion with the judge or the public prosecutor, nor to depend upon the subsequent conduct of the convicted person. If it were so, what subsequent conduct would demand or justify the pronouncing or the withholding of the sentence? And who would determine its character? Such conduct might be innocent in itself, yet offensive to those in whom the power to apprehend or to punish resided. The liberty of the citizen cannot, in a free country, be made to depend for its security on the arbitrary will of any public officer. It can be taken from him by due process of law only."

In the case of Ex parte Eley, supra, the facts were that the county judge pronounced judgment on the 15th day of April, 1912, and upon the judgment issued a commitment. Upon this commitment petitioner was confined in the county jail of Jackson county, and for some unknown reason was released by the county judge, sheriff and county attorney. After the time for the judgment and sentence to be served, to wit: on August 12, 1912, a second commitment was issued by the county court growing out of the same judgment and sentence, and petitioner was again imprisoned in the county jail, and filed his petition for writ of habeas corpus. In this court it was said [9 Okla. Cr. 76, 130 P. 823]:

"The judgment was not vacated on lawful grounds or otherwise, nor the petitioner released by the writ of habeas corpus, on the ground that the judgment against him was void. Just what prompted such action upon the part of the officers mentioned is not explained, and no effort has been made looking to that end. When a judgment is pronounced and no appeal taken, and a commitment issued and the prisoner delivered to the custody of the county jailor, there are only three ways for him to be released lawfully until the judgment is satisfied:

First, by habeas corpus, on the ground that the judgment is void; second, by order of the court, when judgment is vacated or set aside upon lawful grounds; third, by parole or pardon from the Governor. Any other discharge or release is without authority of law, and officers guilty of such conduct lay themselves liable to the penalties prescribed by the statute.

"As said by this court in Ex parte McClure, 6 Okla. Cr. 241, 118 P. 591:

" The county court was without power or authority to grant a parole. Under the Constitution that is the prerogative of the supreme executive power vested in the Governor; and the only effect of the order discharging petitioner on probation, upon good behavior, was to modify the judgment imposing the fine, and directing imprisonment until such fine is satisfied, by making the fine, in effect, nothing more than a civil judgment, to be satisfied by execution as on a judgment in a civil action. To that extent only could the court modify the judgment rendered.'

"The county attorney and the sheriff are without color of power of any kind to release a prisoner, and what is said by the court in Ex parte McClure, supra, applies with greater force to sheriffs and county attorneys; for they cannot in the least vacate, modify, or change a judgment of the court, and the court itself can only modify, vacate, or set aside a judgment upon lawful grounds.

"We are asked by counsel for the respondent to hold that the act of the petitioner in departing from the custody of the jailor, under the circumstances heretofore set out, amounted to a technical escape. This we cannot do. The petitioner in this case did no more than any other intelligent human being would have done under like circumstances—that is, to go home, when the court who had sentenced him, the county attorney who had prosecuted him, and the sheriff who had incarcerated him told him he could do so—and a rule could not be established, technical or otherwise, holding him to be an escape and liable to reincarceration, without placing in the hands

of county courts, sheriffs, and prosecuting attorneys the power to defeat every judgment of a court of record entered in this state, and permit them to harass and impose upon the unfortunate members of our citizenship, who happen to be convicted and sentenced for a crime, during an endless period, by placing them in jail to-day and releasing them to-morrow, with or without cause, as their caprice might suggest. The petitioner in this case was in the custody of the sheriff and subject to his call at all times until the expiration of the prison sentence, and was in legal effect a 'trusty.' We do not suggest that the action of the officers was prompted by corrupt motives, but it makes no difference what prompts the act; the rule of law is the same. There is no statute authorizing such conduct, and there should be none. The demurrer to the petition is overruled."

In the case of Ex parte Wilkerson, 38 Okla. Cr. 86, 258 P. 1069, this court said:

"That petitioner was convicted on a charge that he did have intoxicating liquor in his possession with intent to sell the same; that the judgment was pronounced June 2, 1917, from which judgment an appeal was perfected to this court, and on April 10, 1919, the judgment was affirmed for failure to prosecute the appeal. Wilkerson v. State, 15 Okla. Cr. 689, 178 P. 895. It also appears from the testimony that by agreement of the county attorney and the sheriff, and the payment of costs while said appeal was pending, said cause would be dismissed, and that agreement was to receive the approval of the Governor; that this is shown by the testimony of the then county attorney and the respondent, and that the same was approved by subsequent county attorneys and county judges.

"No sufficient reason is offered to show why, at this time, 10 years after said judgment was rendered, the same should be revived. We deem it sufficient to say, further detailing the facts of the case as shown by the evidence submitted, that the judgment and sentence has been satisfied in law, if not in fact (Ex parte Eley, 9

438

Okla. Cr. 76, 130 P. 821), and that petitioner is entitled to be discharged."

This case very much parallels the facts in the instant case. This petitioner was tried in the county court of Oklahoma county and convicted of criminal libel on March 18, 1925, and fined in the sum of $100 and costs. He executed a supersedeas bond and appealed to this court where the judgment and sentence of the lower court was affirmed. See Tucker v. State, 42 Okla. Cr. 204, 275 P. 382. The mandate of this court was filed in the office of the court clerk of Oklahoma county on March 27, 1929, directing the sheriff of Oklahoma county to arrest petitioner and to incarcerate him in the county jail until the fine and costs should have been paid or satisfied. This commitment was placed in the hands of the sheriff of Oklahoma county on the 27th day of March, 1929.

There is a slight conflict in the evidence as shown by the record as to just what action was taken in the execution of this commitment. The petitioner says that he was in the State of Idaho at the time, but that he immediately returned to Oklahoma county and went to the sheriff's office on June 10, 1929, for the purpose of surrendering himself to the sheriff. That he asked for the sheriff, but that the sheriff was not there. That he saw a deputy sheriff, Mr. R. Q. Melson, whom he knew, and that he told him that he was there to surrender under the commitment. That he was informed by the deputy sheriff that he could not find the commitment and that the deputy sheriff said that they would let him know later when or if they wanted him.

Deputy Sheriff Melson, testifying before this court, said that he remembered petitioner's coming to the sheriff's office at the old courthouse and having a talk

with him, and saying in substance, "I understand the sheriff has a commitment for me and I have come to surrender." That he did not have a commitment, and when he could not find it, petitioner left the sheriff's office. The record does reveal that this case was affirmed in this court and that the mandate was issued to the county court and placed in the hands of the sheriff of Oklahoma county on the 27th day of March, 1929. That for some unknown reason the same was never executed until the commitment was issued on the 5th day of August, 1940, eleven years and four months after the same was allegedly placed in the hands of the sheriff.

During this time defendant has lived in Oklahoma City. His home address has been listed in the telephone directory and the city directory. He has at all times been known to the various county judges, sheriffs and county attorneys who have been in office since the 27th day of March, 1929. That his family is residing here and that his son has attended the public schools, and that during all of this intervening time no effort or attempt had ever been made by any county officer to take him into custody or incarcerate him by reason of the judgment and sentence aforesaid.

We have carefully considered the facts as shown by the record in this case and, as above stated, the cases from this court bearing on this proposition, and also the cases cited from other jurisdictions. Some of the decisions of other courts are based upon statutes different from ours and may therefore be inapplicable here. The cases from our own court take two different lines of thought, but after a careful consideration of them as applied to the facts here presented, it may be stated that, while a definite time may not be stated as to when judgment and sentence may have to be served, yet it should

not be held for an unreasonable time before one is called upon to serve it. The authorities heretofore cited and quoted from give fully the reasons for this rule. It is unnecessary to further state them. An officer would have a reasonable time under the circumstances of each individual case as the facts would justify to serve the commitment.

In the instant case the record reveals that the mandate came into the hands of the sheriff on the 27th day of March, 1929. At this time the defendant was not in the state, but was in the State of Idaho. He returned here in June, 1929, and presented himself at the office of the sheriff on the 10th day of June, 1929. Certainly the commitment could not be executed before that time. The sheriff may not have been able to find the commitment until some time after that date and he would have had a reasonable time as the facts justify to serve the same. We do not intend to hold in this case that the time began to run immediately upon the receiving of the commitment or the attempted surrender of the petitioner on the 10th day of June, 1929. Even after this occurred, if the sheriff had acted within a reasonable time thereafter, the defendant could have been forced to comply with the commitment so issued, but, on the other hand, the officers should not be permitted to cause an unreasonable delay in the execution of the process which comes into his hands. Time may not be essential, as some of the Oklahoma cases say, by reason of there being no statutory enactment, but certainly a sound public policy should demand that the citizen's right be protected by the officer's being required to act within a reasonable time. Certainly a delay of eleven years and four months as in the instant case cannot be said to be a reasonable time. If this rule should apply to a fine it would apply

to a jail or penitentiary sentence. If an officer could so act it would place in his hands power as great as the Constitution of this state has placed in the hands of the Governor. Officers should be alert to see that no such unreasonable delay is had in the carrying out of the mandates and judgments of the courts in criminal cases. The present officers are not to be censured for the reason that the judgment and sentence in this case was not entered during their administrations or terms of office. We can easily see how the matter might not have been considered by them, but the facts remain that a period of eleven years and four months elapsed in which the mandate of this court was not executed. This is such an unreasonable delay that a sound public policy demands that, under the facts and circumstances of this case, the petitioner should be released, and it is so ordered.

It is the judgment of this court that the writ of habeas corpus should be granted and the petitioner discharged.

JONES, J., concurs.    DOYLE, J., not participating.